**No. 26-30012**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

VARRICK DYER,

*Plaintiff-Appellant,*

V.

NEW ORLEANS CITY; ROMAN NELSON, in his official capacity as Superintendent of New Orleans Fire Department,

*Defendants-Appellees*

---

On Appeal from the United States District Court for the Eastern District of Louisiana,
Case No. 2:24-cv-01702-JVM

---

# BRIEF OF APPELLANT VARRICK DYER

---

Stephanie Dovalina La Bar No. 31137
519 HUEY P. LONG AVE STE. 209
GRETNA, LA 70053
Phone: (504) 442-4959 Phone
Fax: (504) 353-9516 Fax
stephanie@dovalinalawgroup.com
*Attorney for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal:

| | |
|---|---|
| Varrick Dyer | Plaintiff-Appellant |
| Stephanie Dovalina | Counsel for Plaintiff |
| | |
| City of New Orleans | Defendant-Appellee |
| Roman Nelson | Defendant-Appellee |
| James Roquemore | Counsel for Defendant-Appellee |
| Corwin Raymond | Counsel for Defendant-Appellee |
| Charline Gipson | Counsel for Defendant-Appellee |

*/s/ Stephanie Dovalina*
Attorney of Record for Varrick Dyer

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3, Plaintiff-Appellant respectfully requests oral argument. This case presents serious issues involving Title VII, including layered and interrelated legal questions concerning the proper pleading standard for Title VII claims, the boundaries of the futility doctrine under Rule 15, and the proper standard for a motion for summary judgment in a Title VII claim. These issues would benefit from a focused adversarial presentation.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS..................................................I**

**STATEMENT REGARDING ORAL ARGUMENT........................................ II**

**TABLE OF CONTENTS ..........................................................................III**

**TABLE OF AUTHORITIES ........................................................................V**

**JURISDICTION.........................................................................................1**

**STATEMENT OF ISSUES .........................................................................1**

**STATEMENT OF CASE ...........................................................................2**

I. FACTS ..........................................................................................................2
II. PROCEDURAL HISTORY ............................................................................10

**SUMMARY OF ARGUMENT .................................................................14**

**ARGUMENT ...........................................................................................15**

I. STANDARD OF REVIEW ............................................................................15
II. THE DISTRICT COURT ERRED IN GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT. ...........................................................................15
A. The district court failed to apply the proper standard...........................15
B. Defendant failed to provide a legitimate, non-discriminatory reason for promoting Simon over Dyer. ....................................................................17
C. There is a genuine issue of material fact concerning whether Defendants' proffered reasons are pretext. ......................................................20
D. The district court erred in requiring Dyer to show racial animus. .........25
III. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS. .........................................................................................................28
A. The district court applied an improper pleading standard in dismissing Dyer's claims. ...........................................................................................28
B. Dyer's complaint stated a plausible retaliation claim............................29
1. Dyer adequately pleaded that he engaged in a protected activity. .........30
2. Dyer adequately pleaded that he suffered an adverse employment action……………………………………………………………………….32
3. Dyer adequately pleaded a causal connection between his protected activity and the retaliation. ......................................................................34
C. Dyer's Complaint stated a plausible hostile work environment claim...37
D. Dyer's Complaint stated a plausible conspiracy claim..........................39
E. Dyer's Complaint stated a plausible claim under La. R.S. 51:2256. .....41
IV. THE DISTRICT COURT ERRED IN DENYING DYER'S MOTION TO AMEND......42

**CONCLUSION....................................................................................................466**

# TABLE OF AUTHORITIES

## Cases

*Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376 (5th Cir. 2003) .................................30
*Alkhawaldeh v. Dow Chem. Co*., 851 F.3d 422 (5th Cir. 2017) .............................25
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ..........................................18
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ..................................................29
*Besser v. Texas Gen. Land Off*., 834 F. App'x 876 (5th Cir. 2020) .........................35
*Brown v. Wal-Mart Stores E., L.P*., 969 F.3d 571 (5th Cir. 2020) ..........................35
*Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006) .. 32, 34
*Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019) .......................................................40
*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019). ...................29
*Crawford v. Metro. Govt. of Nashville and Davidson Cnty., Tenn*., 555 U.S. 271 (2009) ..........................................................................................................30
*De Anda v. St. Joseph Hosp*., 671 F.2d 850 (5th Cir. 1982) ...................................30
*DeCorte v. Jordan*, 497 F.3d 433 (5th Cir. 2007) ...................................................21
*DePree v. Saunders,* 588 F.3d 282 (5th Cir. 2009). ................................................15
*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ...................................................21
*Frank v. Xerox Corp*., 347 F.3d 130 (5th Cir. 2003) ..............................................37
*Goudeau v. Nat'l Oilwell Varco, L*.P., 793 F.3d 470 (5th Cir. 2015) ......................21
*Harrison v. Brookhaven Sch. Dist.,* 82 F.4th 427 (5th Cir. 2023). ..........................32
*Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224 (5th Cir. 2016). ........................16
*Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*, 79 F.4th 464 (5th Cir. 2023) ..........................................................................................................28
*Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994). ..............................................39
*Int'l Shortstop, Inc. v. Rally, Inc.,* 939 F.2d 1257 (5th Cir. 1991). .........................17
*Laxton v. Gap Inc*., 333 F.3d 572 (5th Cir. 2003). ..................................................21
*Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023) ..................................................... 28, 46
*Lormand v. U.S. Unwired, Inc*., 565 F.3d 228 (5th Cir. 2009). ...............................28
*Mauder v. Metro. Transit Auth*., 446 F.3d 574 (5th Cir. 2006) ..............................35
*Mayeaux v. Louisiana Health Service & Indemnity Co.,* 376 F.3d 420 (5th Cir. 2004). ........................................................................................................42
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................ 17, 29
*Nichols v. Lewis Grocer,* 138 F.3d 563 (5th Cir. 1998) ..........................................21
*Nowlin v. Resolution Trust Corp*., 33 F.3d 498 (5th Cir. 1994). .............................18
*Nunez v. Superior Oil Co.,* 572 F.2d 1119 (5th Cir. 1978) .....................................16
*Parker v. State of Louisiana Dep't of Educ. Special Sch. Dist*., 323 Fed.Appx. 321 (5th Cir. 2009) ..........................................................................................37
*Ramsey v. Henderson,* 286 F.3d 264 (5th Cir. 2002) .............................................37

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000) . 16,19, 20, 21, 22
*Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500 (1957)........................................21
*Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563 (5th Cir. 2003). ......................15
*Soublet v. La. Tax Com'n,* 766 F.Supp.2d 723 (E.D. La. February 3, 2011). .........31
*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)...................................... 20, 25
*Stokes v. Gann,* 498 F.3d 483 (5th Cir. 2007) .........................................................15
*Tennant v. Peoria & P.U. Ry. Co.,* 321 U.S. 29 (1944) .........................................15
*Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)........................16
*Tiblier ex rel. Tiblier v. Dlabal*, 743 F.3d 1004 (5th Cir. 2014) ............................16
*Turner v. Pleasan*t, 663 F.3d 770 (5th Cir. 2011), *as revised* (Dec. 16, 2011).......29
*U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711 (1983). ........ 14, 16, 26
*Villarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763 (5th Cir. 2016) ......................15
*Williams v. BRFHH Shreveport, L.L.C.,* 801 F. App'x 921 (5th Cir. 2020)............35
*Williams v. Recovery Sch. Dist*., 859 F. Supp. 2d 824 (E.D. La. 2012) ..................30
*Wittmer v. Phillips 66 Co*., 915 F.3d 328 (5th Cir. 2019). .............................. 17, 25
*Wright v. Union Pac. R.R. Co*., 990 F.3d 428 (5th Cir. 2021). ................. 29, 30, 35

**Statutes**

28 U.S.C. § 1291 ..........................................................................................1
42 U.S.C. § 1985 ............................................................................ 1, 39,41
42 U.S.C. § 2000e-2(a)(1)...............................................................................30

**Rules**

Federal Rule of Civil Procedure 12(b)(6)...............................................................15
Federal Rule of Civil Procedure 56 .......................................................................15
Federal Rule of Civil Procedure 8(a)(2) ..............................................................1, 28

## JURISDICTION

The district court had jurisdiction because Plaintiff-Appellant Varrick Dyer asserted claims of federal question under Title VII, and 42 U.S.C. 1981. The district court entered judgment on December 12, 2025.[1] Dyer timely appealed by filing his notice of appeal on January 9, 2026.[2] This appeal is from a final order and judgment that disposed of all Dyer's claims. It is also an appeal of other adverse orders and rulings of the district court. This Court has jurisdiction because Dyer appeals from the final judgment dismissing his claims.[3]

## STATEMENT OF ISSUES

I. Whether Dyer's first amended complaint was sufficient under Federal Rule of Civil Procedure 8(a)(2) to state a plausible retaliation claim under Title VII, LEDL, and 42 U.S.C. § 1981?

II. Whether Dyer's first amended complaint was sufficient under Federal Rule of Civil Procedure 8(a)(2) to state a plausible race-based hostile work environment claim?

III. Whether Dyer's first amended complaint was sufficient under Federal Rule of Civil Procedure 8(a)(2) to state a plausible conspiracy claim pursuant to 42 U.S.C. § 1985 and La. R.S. 51:2256?

---

[1] ROA.1097,1113.
[2] ROA.1114.
[3] 28 U.S.C. §1291.

V. Did the district court err in denying Dyer's motion to amend?

VI. Did the district court err in granting Defendant's Motion for Summary Judging finding that Defendant's explanation for the promotion of Simon over Dyer was not pretext for discrimination?

## STATEMENT OF CASE

### I. Facts

Varrick Dyer (dark-skinned African American male) has worked for the NOFD for thirty years.[4] As a firefighter, he worked in the Special Operations Unit on the flying squad, working in heavy rescue operations.[5] He was promoted to Captain in July 2004 and served as a Captain within the Hazmat Unit within Special Operations since 2006.[6] Special Operations encompasses heavy rescue, light rescue, hazardous materials, and urban search and rescue.[7]

Prior to 2020, Dyer never had any disciplinary issues or charges. His commitment to the NOFD was demonstrated in early 2020, when he refused to participate in a boycott of overtime work.[8] He did not want to cause harm to NOFD's operations, specifically the Hazmat Unit, and continued to accept overtime assignments.[9] At the same time, Dyer suffered repeated race-based discrimination,

---

[4] ROA.12-13,40-41, 876.
[5] ROA.878-79.
[6] ROA.876.
[7] ROA.948.
[8] ROA.13, 41, 463.
[9] ROA.13, 41.

retaliation, and harassment from his Caucasian co-workers and supervisors, resulting in a hostile work environment.[10] These co-workers ostracized Dyer by refusing to communicate with him.[11] Captain Alan Favalora (Caucasian Male) was initially the main instigator of the harassment.[12] Dyer first reported this treatment in February 2020 to no avail.[13] Specifically, he reached out to Chief Hardy and advised him that he was suffering harassment from other firefighters and shared only that it may be related to his refusal to boycott overtime.[14] He did not tell the Chief, however, that at the same time, he suspected the harassment was related to his race for fear of retaliation.[15]

However, the very next day, while running on a treadmill, Favalora cut power to the treadmill causing Dyer to fall and injure himself.[16] Dyer again reported this harassment to Superintendent McConnell and filed a Special Report the next day.[17] NOFD's response to this was to require Dyer to sleep at another firehouse.[18] Even when Favalora took a year break from NOFD, Dyer was still subject to harassment

---

[10] ROA.13-15, 41-43, 463.
[11] ROA.463.
[12] ROA.13-15, 41-43, 463.
[13] ROA.13,41.
[14] ROA.464.
[15] ROA.464.
[16] ROA.464.
[17] ROA.464.
[18] ROA.464.

by his Caucasian co-workers and supervisors.[19] These individuals spread rumors that he was violent and an "angry Black man."[20]

In 2021, the Chief of Special Operations Unit, Joseph Wheeler, retired. While Dyer was serving as a Captain in the Hazmat Unit and prior to Chief Wheeler's retirement, Wheeler assigned Dyer to perform the duties that would later become the duties of the Special Operations Coordinator, the same duties later assigned to Simon after he was promoted to the position of Special Operations Coordinator.[21] NOFD testified that the individual recommended for the FEO/Special Operations Position is usually the person who was already doing the work on a part time basis or helping out the chief.[22] Upon Wheeler's retirement, NOFD created a Special Operations Coordinator role to promote Danny Simon (Caucasian Male).[23] After this promotion, Simon only needed to work five days a week and was given a take home car.[24] Deputy Chief Armand Bourdais told Dyer that this position was specifically created for Simon.[25] There was no job opening for this role.[26] Superintendent Nelson

---

[19]ROA.464-65.
[20] ROA. 464.
[21] ROA. 861-61, 881-882.
[22] ROA. 861-62, 904-05.
[23] ROA.903, 908.
[24] ROA.883, 908, 913.
[25] ROA. 880.
[26] ROA.903.

approved this assignment based on Bourdais' recommendation.[27] The only qualification for the position is to be a fire captain.[28]

Dyer was subject to further harassment that threatened the very operations of NOFD. For example, in 2022, Dyer was working an overtime shift and supervising two firefighters Bisho and Massa (Caucasian Males) when they responded to a call. After responding to the call, another Captain Martin (Caucasian Male), made a false call over the radio for Dyer to report to the command post claiming to be the Chief, then Martin screamed profanities at Dyer and then made false claims that Dyer was going to attack him to Chief David Castle (Caucasian Male) that resulted in disciplinary action.[29]

After Captain Martin yelled "Fuck You Vee" in front of other firefighters at Captain Dyer and then made a false call to him on the radio, Dyer contacted Martin and asked where he was so that he could meet him in person. Captain Martin told Captain Dyer where he would be and then called Chief Castle claiming that he was afraid that Dyer was coming to commit acts of violence, while never mentioning the fact that he tried to instigate a fight.[30] Instead of investigating the issue, Deputy Chief David Castle, who was the highest-ranking officer on duty that day conspired with

---

[27] ROA.903.
[28] ROA.910-911.
[29] ROA.13-16, 41-43, 312-314, 316,330-332, 339-347, 349, 465-466.
[30] ROA.312, 318, 320-322, 332.

Captain Martin to create a volatile situation between Dyer and Martin in hopes of getting Dyer terminated.[31] Castle could have de-escalated the situation and required Dyer to return to his firehouse, but instead called District Chief Salvaggio to let him know that there was going to be a fight between Martin and Dyer.[32]

During the confrontation, Captain Martin yelled and cursed Dyer.[33] In contrast, Dyer simply told Martin that if he had something to say to him, to say it to his face.[34] As a result, Superintendent Roman Nelson imposed the minimum discipline of a written reprimand on Captain Martin for his actions of "engaging in hazing, horseplay, or pranks."[35] In contrast, Dyer received a Rule 25 violation alleging he threatened or acted with violence, an action that results in termination.[36] However, at the disciplinary review board, the NOFD had absolutely no evidence that Dyer acted this way.[37] After this hearing, Superintendent Nelson changed the charge to Rule 21 violation—failure to be courteous and respectful.[38] He was then issued a letter of reprimand.[39] Nelson testified that he is not permitted to change a rule violation if, during the investigation, it appears that another rule

[31] ROA.15,42-43, 318, 466.
[32] ROA.43, 466-467.
[33] ROA.43, 468.
[34] ROA.43, 467.
[35] ROA.43, 468.
[36] ROA.43-44, 468.
[37] ROA.45, 470.
[38] ROA.45.
[39] ROA.45.

violation would be a more appropriate charge.[40] However, this is what Nelson did to Dyer.[41]

The harassment and discrimination were so severe that Dyer took leave in April of 2022.[42] And it continued with co-workers and supervisors spreading rumors that Dyer is violent.[43] Dyer is also held to different standards than other fire captains.[44] Dyer is the only captain who is required to have his overtime hours entered by a chief.[45]

It is unclear when the promotion occurred, but in December 2022, Simon was officially promoted to Fire Education Officer in the Special Operation Unit via Civil Service. This promotion changed Simon's class and increased his rate of pay by 20%.[46] Simon was already performing the duties of this role on a temporary assignment.[47] The minimum qualification for this role is that the person be a Captain.[48] There are no other minimum qualifications or specifications.[49] NOFD's usual policy is to allow the division chief to make the selection, but they do so by putting out emails gauging interest, screening candidates through interviews, or

---

[40] ROA. 45.
[41] ROA.45.
[42] ROA.44.
[43] ROA.44.
[44] ROA.45-46.
[45] ROA.45, 469-70.
[46] ROA.914-915.
[47] ROA.906.
[48] ROA.906, 910.
[49] ROA.906, 910.

posting the position to invite applicants.[50] In this case, Simon was promoted to this role even though there was no announcement for the position.[51] Furthermore, NOFD's custom is to recommend the individual who was already doing the role part-time or assisting. Dyer was assisting Chief Wheeler with this position.[52] In fact, all three captains of the Hazmat Unit in Special Operations assist with the administrative duties.[53] Bourdais was managing Special Operations after Wheeler's retirement and recommended that Simon be promoted to this role.[54] Dyer alleged and testified that he believed that it was discriminatory to offer the position only to Simon when Dyer had been serving as a Hazmat Captain longer and was just as qualified or more qualified than Simon in addition to the fact that Bourdais only surrounds himself with white firefighters and believed that Bourdais wanted a white firefighter in the role.[55]

NOFD testified to conflicting reasons why Dyer was not given the role. At one point, Nelson also testified that he never even considered Dyer for the position.[56] Then, Nelson stated that Dyer was not chosen because he was not involved in Urban Search and Rescue, even though that is not a qualification for the job, and he also

[50] ROA.920-921.
[51] ROA.919-920.
[52] ROA.909.
[53] ROA.909.
[54] ROA.920, 938.
[55] ROA.884-893.
[56] ROA. 940-41.

testified that there was no specific review of skills or duties in the promotion of Simon over Dyer.[57] Finally, Nelson also stated that he did not think Dyer would want the job because he earned so much overtime, something that Dyer can no longer earn since the moratorium on overtime for the City of New Orleans in 2026.[58]

On April 6, 2023, Dyer filed a charge of discrimination with the United States Equal Employment Opportunity Commission for discrimination based on race, harassment, and hostile work environment. ("EEOC").[59] A mere forty-two days later, NOFD retaliated against Dyer by charging him with another disciplinary action for a claimed policy violation, stating he gave away NOFD property.[60] NOFD's decision to issue an excessive and punitive rule violation was in retaliation for Dyer's prior protected activity, including filing an appeal for his first disciplinary incident.[61] NOFD issued a suspension, but at the hearing on the appeal of the suspension, Nelson admitted NOFD lacked evidence that Dyer committed the offense for which he was charged.[62] The Civil Service Commission agreed with Dyer and granted his appeal and reversed the suspension issued by NOFD and noted that it charged him with a more severe infraction than what the evidence supported.[63]

---

[57] ROA.910-11, 914, 924, 938-39.
[58] ROA.921.
[59] ROA.46.
[60] ROA.46.
[61] ROA.472.
[62] ROA.46-47.
[63] ROA.47, 88-90.

## II. Procedural History

Dyer filed his initial Complaint against Defendants on July 7, 2024.[64] Defendants filed a motion to dismiss on October 7, 2024.[65] Plaintiff filed his opposition on October 22, 2024.[66] On December 20, 2024, the district court granted the motion in part and dismissed most of Plaintiff's claims, including retaliation, hostile work environment, and conspiracy under state and federal law.[67]

Defendants failed to timely answer the Complaint and Plaintiff provided consent to allow Defendants to file late.[68] Defendants answered the Complaint on January 15, 2025.[69] Two days later, Defendants filed a motion for summary judgment seeking to dismiss Plaintiff's claims of disparate treatment.[70] Defendants then filed a motion to stay discovery.[71] Plaintiff filed his opposition to both the Motion to Stay and Motion for Summary Judgment on February 12, 2025.[72] Defendants untimely filed their reply brief on February 18, 2025, and sought leave for an extension to file their reply brief the day before the submission date, in

---

[64] ROA.10.
[65] ROA.59.
[66] ROA.99.
[67] ROA.127.
[68] ROA.151.
[69] ROA.164.
[70] ROA.171.
[71] ROA.255.
[72] ROA.271, 386.

violation of Local Rule 7.5 which requires that a reply be filed no later than 4:00 pm two working days prior to the submission date.[73] Plaintiff filed a motion to strike the brief as untimely. Defendants opposed the motion to strike as untimely.[74]

On March 21, 2025, Plaintiff filed a motion for leave to amend the complaint to include additional facts to support his claim for retaliation, conspiracy, and discrimination.[75] The Motion was set for Oral Argument on April 9, 2025.[76] The Court had a status conference set for April 8, 2025.[77] On April 1, 2025, Defendants opposed the motion for leave to amend.[78] On March 31, 2025, the District Court continued the status conference for April 8th without date.[79] On April 4, 2025, the District Court denied the request for oral argument on the Motion for Leave to Amend Complaint.[80] On May 9, 2025, the Court denied Dyer's Motion for Leave to Amend the Complaint.[81]

Plaintiff was forced to request multiple Rule 37 conferences because of Defendants' continuous failure to engage in the discovery process.[82] Plaintiff issued

---

[73] ROA.412, 422.
[74] ROA.426.
[75] ROA.452.
[76] ROA.487.
[77] ROA.239.
[78] ROA.491.
[79] ROA.490.
[80] ROA.499.
[81] ROA.550.
[82] ROA.853-854.

initial discovery requests and deposition notice to NOFD on February 11, 2025.[83] Defendants repeatedly refused to engage in discovery despite Plaintiff pleading with the court to set a conference and continued Rule 37 letters.[84]

On April 14, 2025, Defendants filed a motion for protective order for relief from responding to discovery while their motion to stay discovery was pending.[85] On April 29, 2025, Plaintiff opposed the Motion.[86] On June 4, 2025, the District Court entered a ruling on Defendant's Motion for Summary Judgment, Motion to Stay Discovery and Motion for Protective Order.[87] The Court dismissed all of Dyer's claims except for his race-based discrimination claims related to Simon's promotion, denied the motion for stay and protective order. At the time of the June 4th ruling discovery was set to expire on August 1, 2025.[88]

Even after the Court's ruling Defendants continued to refdays to participate in discovery eventually leading to an order after a status conference on August 22, 2025 wherein they were ordered to serve a formal response to the 30B6 Notice of Deposition within five days, and to certify within seven day that all responsive documents had been provided and that if any had been withheld, the basis for

[83] ROA.513-528, 531.
[84] ROA.536-543,
[85] ROA.508.
[86] ROA.536.
[87] ROA.574.
[88] ROA. 574, 239.

withhold the documents would be provided.[89] Defendants failed to provide any additional documentation in response to the discovery requests and certified that their responses were complete in August 2025.[90] Plaintiff was required to issue several public records requests and pay for documents requested in discovery to obtain partial records related to his case.[91] Only after presenting evidence of partial responses to the public records request and advising of the forthcoming motion to compel, in October, Defendants produced some additional documents, including pay stubs for Simon that had his hourly rate removed, after key depositions.[92]

On October 28, 2025, Defendant filed a second motion for summary judgment for the remaining disparate treatment claim.[93] As part of their evidence, Defendants created documentation showing Simon's and Dyer's net pay, which distorts the fact that Simon receives a significantly higher rate of pay.[94] Plaintiff filed his opposition on November 10, 2025.[95] Defendants filed a reply on November 17, 2025.[96] On December 12, 2025, the district court dismissed the remaining claims.[97] Plaintiff

---

[89] ROA.610-611.
[90] ROA.854.
[91] ROA.854, 1042, 1067.
[92] ROA.855.
[93] ROA.721.
[94] ROA.756-766, 855, 936.
[95] ROA.846.
[96] ROA.1090.
[97] ROA.1097, 1113.

appeals the dismissal of his claims, granting of the motion to dismiss and the denial of his motion to amend.

## SUMMARY OF ARGUMENT

"The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy."[98] Addressing racial discrimination in the workplace is essential not only for the well-being of individuals but also for the overall health and success of society. At the motion to dismiss stage, the district court, though required to assume the truth of the factual allegations and to draw all reasonable inferences in Dyer's favor, improperly dismissed Plaintiff's claims. Defendants' actions were discriminatory, retaliatory, and created a hostile work environment. In dismissing Dyer's claims, the district court disregarded Plaintiff's well-pleaded facts and substituted its own reasoning on the motion to dismiss. The district court also abused its discretion in applying a heightened standard and refusing to grant Plaintiff leave to amend his Complaint. Plaintiff attempted to supplement the Complaint by adding additional facts; however, the district court erred in concluding that this would be futile.

Finally, on the motion for summary judgment, the district court misapplied the summary judgment standard. In its decision granting summary judgment, the district court erred in determining the facts, a task that should have been left to a

[98] *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983).

jury.[99] This outcome is contrary to the law of this Circuit and the Supreme Court. Plaintiff seeks this Court's intervention.

## ARGUMENT

### I. Standard of Review

Plaintiff has appealed dismissal pursuant to Federal Rule of Civil Procedure 56. An appellate court employs a *de novo* standard when reviewing the district court's order granting summary judgment.[100] He has also appealed a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). A grant of a Rule 12(b)(6) motion to dismiss is also subject to *de novo* review.[101] Finally, Plaintiff has appealed the district court's denial of the motion to amend. This ruling is usually subject to an abuse of discretion standard of review.[102] However, when the district court denies a proposed amendment for futility, this Court reviews the denial *de novo.*[103]

### II. The District Court erred in granting Defendant's Second Motion for Summary Judgment.

#### A. The district court failed to apply the proper standard.

The Supreme Court mandates that on a motion for summary judgment, the court is to consider the evidence in the light most favorable to the non-movant, draw

[99] *See Tennant v. Peoria & P.U. Ry. Co.,* 321 U.S. 29, 35 (1944) ("The very essence of [the jury's] function is to select among conflicting inferences... that which it considers most reasonable.").
[100] *DePree v. Saunders,* 588 F.3d 282, 286 (5th Cir. 2009).
[101] *Stokes v. Gann,* 498 F.3d 483, 484 (5th Cir. 2007)
[102] *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).
[103] *Villarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763, 766 (5th Cir. 2016).

all inferences in his favor, and disregard all contrary evidence that the jury is not "required to believe."[104] The court must not weigh the evidence or evaluate its credibility.[105] The Fifth Circuit has emphasized that litigants are entitled to have the jury, not the court, "draw those inferences or conclusions that are appropriate grist for juries."[106]

This standard carries particular force in cases like this one, where the motion for summary judgment is premised almost entirely on depositions, declarations, and affidavits. In these circumstances, "a court must resist the urge to resolve the dispute—especially when… it does not even have the complete depositions. Instead, the finder of fact should resolve the dispute at trial."[107] The central question of fact in a Title VII case for a jury is "whether the defendant intentionally discriminated against the plaintiff."[108] It is the trier of fact who "must decide which party's explanation of the employer's motivation it believes."[109]

The district court was presented with evidence almost entirely in the form of affidavits and depositions, yet rather than reserving credibility determinations for the jury, it resolved disputed factual questions against Plaintiff. Because factual

---

[104] *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000).
[105] *Reeves*, 530 U.S. at 150; *Tiblier ex rel. Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014).
[106] *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir. 1978).
[107] *Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224, 245 (5th Cir. 2016).
[108] *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983) (citing *Tex. Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981)).
[109] *Id.* at 716.

disputes may not be resolved on summary judgment, a non-movant need not offer all its evidence, but rather only enough so that a fact-finder might return a verdict in its favor.[110] As demonstrated below, Plaintiff has far exceeded that threshold.

### B. Defendant failed to provide a legitimate, non-discriminatory reason for promoting Simon over Dyer.

It is undisputed that Dyer established a *prima facie* case of race discrimination based on disparate treatment. A plaintiff can either present direct evidence of discrimination or rely on circumstantial evidence using the *McDonnell Douglas* burden shifting analysis.[111] In that case, the plaintiff must demonstrate that he is a member of a protected class, was qualified for the position, suffered an adverse employment action, and was treated less favorably than other similarly situated employees not of the same protected class.[112] Here, Defendant only contested the last two elements.[113] The district court correctly found that there was a genuine factual dispute for the jury to decide whether or not Plaintiff was subject to an adverse employment action and that Dyer and Simon were similarly situated.[114]

Once a plaintiff has made their *prima facie* case, the burden of production shifts to the defendant to come forward with a legitimate, non-discriminatory reason

[110] *Int'l Shortstop, Inc. v. Rally, Inc.,* 939 F.2d 1257, 1264 (5th Cir. 1991).
[111] *Wittmer v. Phillips 66 Co*., 915 F.3d 328, 332 (5th Cir. 2019).
[112] *See id.*
[113] ROA.730.
[114] ROA.1108-09.

to explain why someone else was promoted.[115] Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.[116] Defendant's purported non-discriminatory reasons for its decision to promote Simon over Dyer are conflicting and cannot be believed.

At the Rule 30b6 deposition, Superintendent Nelson made numerous conflicting claims, including three different reasons for Simon's promotion over Dyer. First, Nelson claimed that there was no selection process; Nelson put Simon in the role because of Bourdais' recommendation, and that Dyer was never even considered for the position.[117] Second, he pivoted to assert that Simon had better qualifications because he volunteers with the Urban Search and Rescue team.[118]. However, NOFD, through Nelson didn't know either firefighter's training credentials, something NOFD refused to produce in discovery.[119] Third, Nelson suggested that he did not believe Dyer would even want the job because he was the highest overtime earner.[120] Overtime hours are not guaranteed hours, and Dyer is prevented from earning overtime since January of 2026 when the City of New Orleans issued a moratorium on overtime hours for employees.

---

[115] *See Aikens*, 460 U.S. at 714; *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507 (5th Cir. 1994).
[116] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).
[117] ROA.920, 941.
[118] ROA.922, 939. Defendant provided no direct evidence of this fact, and no information was provided in discovery.
[119] ROA.923 "Q. What certifications does Danny Simon hold that Captain Dyer does not? A. I have no idea."
[120] ROA.921.

But the district court ignored the conflicting and contradictory testimony and instead accepted as true Defendants claim that "Dyer was not considered for the assignment because it was assumed that he would not want to forgo earning overtime."[121] It summarily states that Defendants met their burden to produce a legitimate, non-discriminatory reason for their decision to "reassign Simon."[122] In doing so, the district court made a credibility determination as a trier of fact, which it should not have done.[123] Even the district court's use of "reassign", though the evidence demonstrates this was a promotional transaction, demonstrates that the district court misapplied the summary judgment standard in making the determination that it was a reassignment despite NOFD testifying that it was a promotion by Civil Service standards.[124]The district court erred in accepting as true Defendants' inconsistent reasons for promoting Simon over Dyer. The Cour was to consider the evidence in the light most favorable to the non-movant, draw all inferences in his favor, and disregard all contrary evidence that the jury is not "required to believe."[125] The District Court did not follow this standard.

---

[121] ROA.1109.
[122] ROA.1109.
[123] *See, e.g., Reeves,* 530 U.S. at 150.
[124] ROA.937.
[125] *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000).

**C. There is a genuine issue of material fact concerning whether Defendants' proffered reasons are pretext.**

Even if this Court agrees that Defendant has stated a non-discriminatory reason for its decision to promote Simon, Plaintiff adequately rebutted this reasoning. If a defendant offers a legitimate, non-discriminatory reason for its action, a plaintiff must put forth evidence to create a genuine issue of material fact that either 1) the defendant's reason is pretext or 2) the defendant's reason, if true, is only one reason for its action, and another motivating factor is the plaintiff's protected characteristic.[126] The United States Supreme Court has stated:

> The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [him]" because of his race. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination...upon such rejection, no additional proof of discrimination is *required*.[127]

The trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation.[128] And a juror may infer discrimination when an employer

[126] *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 411-12 (5th Cir. 2007).
[127] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (citations omitted).
[128] *Reeves,* 530 U.S. at 146.

offers inconsistent explanations for the employment action.[129] Moreover, a plaintiff only needs to show circumstantial evidence that a defendant's actions were discriminatory.[130] The Supreme Court has repeatedly "recognized that evidence that a defendant's explanation for an employment practice is unworthy of credence is one form of circumstantial evidence that is probative of intentional discrimination."[131] Similarly, failure to follow procedures and policy is circumstantial evidence of pretext.[132]

Here, the district court erred in acting as the trier of fact to conclude that the Defendants' explanations for the promotion were worthy of credence. First, Defendants' credibility is in question because, throughout these proceedings, they have attempted to conceal that Simon received a promotion. Initially, Defendant claimed that Simon was never promoted to Chief of Special Operations.[133] But that was a misrepresentation of Dyer's claim, which was that Simon was put into an equivalent position by appointment.[134] And in fact, Defendant's own exhibit demonstrated that Simon received a promotion to Fire Education Officer in

---

[129] *DeCorte v. Jordan*, 497 F.3d 433, 439 (5th Cir. 2007) (citing *Nichols v. Lewis Grocer,* 138 F.3d 563, 568 (5th Cir. 1998)).
[130] *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (citing *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 508, n. 17 (1957)).
[131] *Id.* (quoting in part *Reeves,* 530 U.S. at 147-48) (internal citations omitted).
[132] *See e.g., Goudeau v. Nat'l Oilwell Varco, L.*P., 793 F.3d 470, 477 (5th Cir. 2015) (citing *Laxton v. Gap Inc*., 333 F.3d 572, 581 (5th Cir. 2003)).
[133] ROA.171.
[134] ROA.288.

December 2022,[135] and later testified that civil service classifies the Fire Education Officer as a promotional transaction from one class to another with a higher rate of pay.[136] But Defendant still claimed that Simon was not promoted.[137] Notably, Defendants' Second Motion for Summary Judgment again skirts around Simon's promotion to Fire Education Officer and only focuses on Simon's promotion to Special Operations Coordinator.[138] The district court ignored this. The district court accepted Defendants claim that this was a mere "reassignment."[139] But these facts go directly to the Defendants' credibility. And their attempt to distort the facts and hide the promotion at a minimum is suspect and at worst is intentional. These actions, when coupled with Defendants' conflicting and inconsistent reasons for promoting Simon over Dyer, demonstrate that the reasons are "unworthy of credence."[140]

Furthermore, Defendant failed to follow the usual promotion procedures. At the Rule 30(b)(6) deposition, Superintendent Nelson testified that usually NOFD

---

[135] ROA.213.
[136] ROA.915, 937.
[137] ROA.417.
[138] ROA.730. In that role, Superintendent testified that Simon's work schedule changed to a five-day work week and he was allowed a take home car. ROA. .908, 913. This action would still be discriminatory because Title VII makes it unlawful for an employer to discriminate against an employee with respect to the "terms, conditions, or privileges of employment." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir.2023). "The days and hours that one works are quintessential 'terms or conditions' or one's employment." *Id.* at 503.
[139] ROA.1109.
[140] *See Reeves,* 530 U.S. at 147-48.

goes by seniority for a promotion.[141] For the role of Fire Education Officer, NOFD does "periodic interviews to screen candidates to gauge interests, and then if subsequent vacancies come up, they may hire someone who was previously interviewed, or if they don't have any viable candidates, then they'll do interviews."[142] They will also send out emails of interest.[143] They also generally post the position to allow and gauge interest.[144] Here, NOFD did none of these actions and instead allowed Chief Deputy Bourdais to choose Simon, even though Captain Dyer was performing the duties prior to Simon, was qualified for the position, and had more time as a Hazmat Captain.[145] Dyer wasn't even aware that a position was created until after it was given to Simon.[146]

Defendant's proffered reason for hiring Simon based on his qualifications is internally contradictory by its own testimony and the undisputed facts of record. While NOFD claimed Simon's Urban Search and Rescue experience made him the more qualified candidate, Nelson simultaneously admitted that no review or comparison of the two individuals was ever conducted, and that he never even considered either candidate's annual performance evaluations. ROA.924, 939. A

---

[141] ROA.922.
[142] ROA.904.
[143] ROA.904.
[144] ROA.921.
[145] ROA.903.
[146] ROA.881, 885-886,888.

qualification-based justification rings hollow when the decision-maker concedes he never actually evaluated the qualifications of either candidate.

Moreover, NOFD's own characterization of the Fire Education Officer role undermines any suggestion that Urban Search and Rescue experience was a meaningful or relevant distinguishing factor. Nelson testified that the majority of the role involves administrative work and equipment maintenance.[147] Any specialized search and rescue qualifications Simon may have possessed would therefore have been largely irrelevant to the day-to-day demands of the position. This inference is reinforced by the undisputed fact that the only stated qualification for the Fire Education Officer position is that the individual holds the rank of fire captain—a requirement both Dyer and Simon satisfied equally.[148] Where the only formal qualification for a position is one that both candidates possess, an employer's post-hoc invocation of additional, unverified, and functionally irrelevant criteria is precisely the type of explanation that a reasonable jury could find unworthy of credence. The district court was required to draw that inference in Plaintiff's favor, but it failed to do so.

The circumstantial evidence of pretext presented here precludes summary judgment. NOFD's admission that no selection process was conducted, that no

[147] ROA.924.
[148] ROA.910-911, 914.

comparison of candidates was performed, and that performance evaluations were wholly disregarded reflects a departure from any principled or procedurally sound promotion process. When combined with NOFD's three irreconcilable explanations and its reliance on a qualification that was both unverified and irrelevant to the position, the totality of the evidence creates a genuine dispute of material fact that the district court cannot resolve on summary judgment.

**D. The district court erred in requiring Dyer to show racial animus.**

After acting as the trier of fact and concluding that Defendants reasons were legitimate and worthy of credence, the district court then erroneously required a showing of racial discrimination. But that is not a requirement. It is up to the jury to decide whether it believes or rejects the defendant's proffered reason, and the plaintiff is under no duty to provide "additional proof of discrimination."[149]

Here, the district court summarily concluded that "the failure to offer the position to anyone other than Simon does not have any racial component and cannot reasonably show that race was a factor in NOFD's decision."[150] But this conflicts with its own findings that Dyer met the *prima facie* case under *Alkhawaldeh.*[151] Plaintiff has proven, and Defendant conceded that Dyer was of a protected class and

---

[149] *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993).
[150] ROA.1110.
[151] *Alkhawaldeh. v. Dow Chem. Co*., 851 F.3d 422, 426 (5th Cir. 2017). *See also Wittmer v. Phillips 66 Co.,* 915 F.3d 328, 332 (5th Cir. 2019).

qualified for the position.[152] The district court subsequently found that there was a genuine issue of material fact as to whether Dyer suffered an adverse employment action[153] and that a juror could find that Dyer and Simon were similarly situated.[154] This is sufficient circumstantial evidence. Dyer was under no duty to reprove racial discrimination.

The Supreme Court has addressed this exact issue. In *U.S. Postal Serv. Bd. Of Governors v. Aikens,* the Court explained that if the defendant

> fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII.[155]

Whether the action was discriminatory is the "ultimate factual issue in the case."[156] The district court also attempted to have Dyer prove racial animus and a cat's paw theory.[157] But the Supreme Court has rejected attempts by courts to require plaintiffs to present direct evidence of discrimination after they have already met a prima facie

---

152 ROA.730.
153 ROA.1107.
154 ROA.1108.
155 460 U.S. at 715.
156 *Id.*
157 ROA.1106-1107, 1111.

case.[158] For this reason, the district court erred by acting as the trier of fact on this ultimate issue that should have gone to the jury.

There is no question that NOFD intentionally discriminated against Dyer by treating him less favorably than Simon. Failure to follow policy and promoting a white employee over a Black employee without regard to their qualifications or experiences, or worse, not even considering the Black employee, is a racially based action. The district court failed to question the Defendants' conflicting and varying reasons for promoting Simon over Dyer. But the differential treatment is clear, and it is for the jury to decide whether it believes the Defendants or the Plaintiff.

However, Dyer alleged and testified that he believed that it was discriminatory to offer the position only to Simon when Dyer had been serving as a Hazmat Captain longer and was just as qualified or more qualified than Simon in addition to the fact that Bourdais only surrounds himself with white firefighters and believed that Bourdais wanted a white firefighter in the role.[159]

Instead of viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the district court improperly weighed the evidence and resolved credibility questions against him. This was a fundamental

[158] *See Aikens*, 460 U.S. at 717. ("The District Court erroneously thought that respondent was required to submit direct evidence of discriminatory intent and erroneously focused on the question of *prima facie* case rather than directly on the question of discrimination.").

[159] ROA.884-893.

misapplication of the summary judgment standard that this Court should correct. The question of whether Defendant intentionally discriminated against Plaintiff because of his race is one for the jury—not the district court—to decide.[160] Accordingly, the district court's grant of summary judgment should be reversed.

## III. The District Court erred in granting Defendants' Motion to Dismiss.

### A. The district court applied an improper pleading standard in dismissing Dyer's claims.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." All facts in the complaint are accepted as true.[161] And allegations must be examined in the light most favorable to the plaintiff, with every reasonable inference resolved in the plaintiff's favor.[162] "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level."[163] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those

---

[160] *See Aikens*, 460 U.S. at 716.
[161] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[162] *Lewis v. Danos*, 83 F.4th 948, 953 (5th Cir. 2023).
[163] *Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*, 79 F.4th 464, 469 (5th Cir. 2023) (quoting *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)).

facts is improbable, and 'that a recovery is very remote and unlikely.'"[164] These motions are disfavored and rarely granted.[165]

A Title VII plaintiff "need not make out a prima facie case" under *McDonnell Douglas Corp. v. Green*[166] "in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."[167] But that is exactly what the district court required. The purpose of this pleading requirement is to ensure that a plaintiff alleges sufficient facts to put the defendant on notice of the claim. Requiring more at the complaint stage—as done here—prevents the plaintiff from proceeding to the stage of litigation designed to allow him to acquire the evidence needed to prove his claim.

**B. Dyer's complaint stated a plausible retaliation claim.**

A valid retaliation claim under Title VII requires that Dyer demonstrate: (1) that he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action.[168] Here, the district court erred by independently weighing evidence outside of the pleadings, resolving disputed factual questions against Dyer, and substituting its own merits judgment for the role reserved for the factfinder.

---

[164] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
[165] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011).
[166] 411 U.S. 792 (1973).
[167] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).
[168] *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

### 1. Dyer adequately pleaded that he engaged in a protected activity.

A "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[169] An unlawful employment practice includes discriminating against an individual based on race.[170] A plaintiff is not required to show that an unlawful employment practice actually existed, but only that the plaintiff had a "reasonable belief" that such practices existed.[171] Pursuant to Title VII, opposition to a practice means resisting or contending against the discrimination.[172] For that reason, the Fifth Circuit has found that an internal complaint is a protected activity under Title VII.[173]

Dyer pleaded that he subjectively believed that NOFD was singling him out and targeting him because of his race.[174] Dyer pleaded that he complained to Superintendent McConnell about this conduct on February 22, 2020.[175] Dyer engaged in protected activity when he reported the harassment by Favalora to his

---

[169] *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830–31 (E.D. La. 2012) (citing *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003)).
[170] *See* 42 U.S.C. § 2000e-2(a)(1).
[171] *De Anda v. St. Joseph Hosp*., 671 F.2d 850, 853 n.2 (5th Cir. 1982).
[172] *See Crawford v. Metro. Govt. of Nashville and Davidson Cnty., Tenn*., 555 U.S. 271, 277–78, (2009).
[173] *See Wright*, 990 F.3d at 434.
[174] ROA.40-41.
[175] ROA.41.

superiors.[176] On November 14, 2022 Dyer also appealed the decision to discipline and charge him with a more punitive rule violation than Captain Martin.[177] Dyer filed an EEOC claim on April 6, 2023.[178] On May 18, 2023, Dyer was charged with another disciplinary action; he appealed the action on July 19, 2023.[179] On October 19, 2023, Dyer amended his charge of discrimination to add in retaliation charges related to additional disciplinary actions and after he testified in a civil service hearing that he believed he was being discriminated against and disciplined because of his race.[180] On December 14, 2023, the Civil Service granted Dyer's second finding that NOFD did not have evidence to support the charge and charged him with a violation with a more severe penalty than the evidence supported.[181]

The district court erred in concluding that the only protected activity that Dyer engaged in was the EEOC claim.[182] Dyer's reporting of his co-workers' discriminatory and harassing conduct meets the requirement of opposition. Furthermore, his appeal of both discipline actions to the Civil Service Commission is protected activity.[183] Because he opposed an activity he believed to be unlawful,

---

[176] ROA. 41. In his proposed Second Amended Complaint, Dyer identified that he reached out to Chief Hardy and Superintendent McConnel about the discriminatory actions.
[177] ROA.43-45, 77.
[178] ROA. 46.
[179] ROA. 46-47
[180] ROA.47.
[181] ROA.86-90.
[182] ROA.135.
[183] *See e.g. Soublet v. La. Tax Com'n,* 766 F.Supp.2d 723, 734 (E.D. La. February 3, 2011).

he was engaged in a protected activity, meeting the pleading standard for the first element for a retaliation claim. Dyer was disciplined arbitrarily on June 23, 2023, after he filed his charge of discrimination on April 6, 2023, and testified about his belief that he was being discriminated against due to race during his first civil service hearing on February 27, 2023, and on May 2, 2023.[184]

**2. Dyer adequately pleaded that he suffered an adverse employment action.**

The broad definition of adverse employment action in *Hamilton* applies to all Title VII claims, including retaliation.[185] An action is materially adverse for purposes of a retaliation claim if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[186] The inquiry is objective and focuses on the nature and likely effect of the employer's action at the time it was taken.[187]

Here, the district court erred in treating the Civil Service Commission's divided decision as conclusive proof that the Rule 35 charge against Dyer was not "baseless" and using that conclusion to foreclose his retaliation claim.[188] Once again, the district court resolved a contested factual dispute in favor of the Defendants. The Commission's decision was divided: only one of the three commissioners would

---

[184] ROA.76-84.
[185] *See Harrison v. Brookhaven Sch. Dist.,* 82 F.4th 427, 428 (5th Cir. 2023).
[186] *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).
[187] *Id.* at 68-69.
[188] ROA.136.

have affirmed the suspension.[189] However, the result of the ruling was that Dyer's appeal was granted and the Commission by majority found that the discipline was arbitrary and reversed the suspension.[190] A divided ruling is, by definition, a disputed one. Dyer alleged in his Complaint that the charge was never supported by evidence.[191] The district court acknowledged the Commission ultimately reversed the suspension—a finding consistent with Dyer's allegation—but nonetheless sided with the defense characterization of the charge as meritorious.[192] At the 12(b)(6) stage, where disputed facts must be resolved in the plaintiff's favor, this was clear error. The question of whether the charge was pretextual is precisely the kind of factual dispute that must be tested through discovery, not resolved on the pleadings.

Further, the district court erroneously concluded that a reasonable employee would not be dissuaded from filing an EEOC charge given the retaliatory conduct of Defendants.[193] It came to this conclusion because Dyer's suspension was ultimately reversed on appeal.[194] This holding misconstrues the governing standard, which is objective. It ignores Supreme Court precedent holding that even when a disciplinary action is ultimately reversed, the suspension remains a deterrent to opposing

---

[189] ROA.86-92.
[190] *Id.*
[191] ROA.46-47.
[192] ROA.136.
[193] ROA.137.
[194] ROA.136-137.

discriminatory practices.[195] A 36-hour suspension, imposed by an employer following an employee's EEOC charge, plainly meets that standard. The suspension carried real and immediate consequences: lost pay, a formal disciplinary record, and the burden of mounting an appeal before the Civil Service Commission, which incurred attorney fees. The fact that Dyer ultimately prevailed before the Commission does not erase these harms; if anything, it confirms that the charge was unjustified when made.

Moreover, the district court completely ignored the multiple adverse actions Dyer suffered because of his internal complaints and appeals of discipline. For example, he was passed over for a promotion, first to Special Operations Coordinator and then to Fire Education Officer.[196] He was also subject to different standards than his white counterparts. Dyer is the only captain to have a chief enter his overtime hours.[197] Dyer was subject to harsher discipline than Captain Martin for similar behavior.[198] Because the district court erroneously limited the protected activity to only the EEOC filing, it did not properly review all these adverse acts.[199]

**3. Dyer adequately pleaded a causal connection between his protected activity and the retaliation.**

[195] *See Burlington,* 548 U.S. at 72-72.
[196] ROA.44.
[197] ROA.45.
[198] ROA.43, 45.
[199] Furthermore, the denial of the leave to amend results in pertinent facts being left out.

At the prima facie stage, the causation standard is less stringent than the strict "but-for" causation standard.[200] A plaintiff need not show that the protected activity was the sole cause for retaliation, only that the two are "are not completely unrelated."[201] The Fifth Circuit precedent has found that "close timing permits an inference of causation."[202] Courts have held that periods as long as two and one-half months can show causation for retaliation purposes.[203]

All of these acts come within a close period of time. Dyer first complained of discrimination and harassment in February 2020.[204] Dyer was consistently subjected to retaliation in the form of rumors, harassment, and excessive discipline. After filing his EEOC claim on April 6, 2023, he was subjected to unfounded and excessive discipline a mere 42 days later when he was suspended for 26 hours.[205] This timeframe falls within the time period in which a plaintiff can rely on temporal proximity alone to establish causation.[206] The district court acknowledged the 42-day gap but concluded that timing alone was insufficient to state a plausible claim, in part because the charge was not "baseless." But as discussed above, whether the

---

[200] *Williams v. BRFHH Shreveport, L.L.C.,* 801 F. App'x 921, 924–26 (5th Cir. 2020).
[201] *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020) (quoting *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006)).
[202] *Wright,* 990 F.3d at 434.
[203] *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (the Fifth Circuit has held periods of six-and-a-half weeks, two months, and two-and-a-half months to be close enough to show a causal connection).
[204] ROA.41.
[205] ROA.46-47.
[206] *See Brown,* 969 F.3d at 578.

charge was baseless is a merits question that cannot be resolved against the plaintiff at this stage. A plaintiff alleging suspicious timing, combined with an allegation that the charge lacked evidentiary support—an allegation the court was obligated to accept as true—has done precisely what Rule 12(b)(6) requires: pled a plausible claim. The district court's approach would effectively require retaliation plaintiffs to disprove the employer's proffered justification at the pleading stage—before any discovery has occurred. At the stage of proceeding, Plaintiff alleged more than sufficient facts to permit at least an inference of knowledge of Dyer's protected conduct to establish the required causal link between his conduct and the alleged retaliation.

For the foregoing reasons, the district court's dismissal of Dyer's retaliation claim should be reversed. Dyer plausibly alleged (1) protected activity in the form of his EEOC charge, internal complaints, and appeals of unwarranted discipline, (2) a materially adverse employment action—failure to promote, held to higher standard than white counterparts, excessive discipline without evidence to support the violations that includes a 36-hour suspension imposed within 42 days of the EEOC charge—and (3) a causal connection supported by close temporal proximity and his allegation that the charge was unsupported by evidence. The district court's contrary conclusion rested on impermissible fact-finding, improper inference-drawing, and a

misapplication of the governing standard. This Court should reverse and remand for further proceedings.

**C. Dyer's Complaint stated a plausible hostile work environment claim.**

To prevail on a race-based hostile work environment claim under Title VII, a plaintiff must demonstrate: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[207] The court must consider the incidents as a whole, looking at the frequency, severity, whether it's humiliating or physically threatening, and whether it interferes with an employee's work performance.[208]

Here, the district court erroneously concluded that Dyer was not subject to severe or pervasive harassment.[209] It ignored the multitude of incidents, including the February 2020 verbal confrontation with another Captain and the physical intimidation of cutting the power to the treadmill,[210] the February 2022 incident, where he was falsely called to the command post,[211] the unwarranted and excessive

---

[207] *Parker v. State of Louisiana Dep't of Educ. Special Sch. Dist.*, 323 Fed.Appx. 321, 325 (5th Cir. 2009) (citing *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002)).
[208] *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).
[209] ROA.139.
[210] ROA.41.
[211] ROA.42.

discipline;[212] the denial of union membership; the denial of promotion to Special Operations Coordinator; and false rumors that he is violent.[213] The district court assessed each incident on its own and found that none were individually dispositive. However, it failed to consider the incidents as a whole and the cumulative weight of the allegations, which spanned years, involved multiple supervisors and co-workers, and touched every part of his professional life. Taken together, these plausibly described a work environment that a jury could find severe or pervasive.

The district court also concluded that Dyer's allegations failed to connect the incidents of harassment with his race.[214] However, all that is required is that the complaint includes enough facts to make a discriminatory motive plausible. Dyer's allegations satisfy that standard. He is a Black employee.[215] He alleges that he was treated differently from white employees in a series of documented respects: he was singled out as the only captain required to enter his own overtime into the tracking system;[216] he was the only employee required to have Chief Casey preside over his disciplinary review board hearing;[217] he was denied the ability to apply for the Special Operations position; and he was excluded from the union.[218] He further

---

[212] ROA.43, 45, 46
[213] ROA.44.
[214] ROA.140.
[215] ROA.40.
[216] ROA.45
[217] ROA.46
[218] ROA.44.

alleges that white employees who engaged in comparable conduct received lighter or no discipline.[219] These are not conclusory recitations—they are specific factual allegations describing differential treatment of a Black employee relative to his white colleagues.

The district court dismissed the race-nexus element largely because each incident had an alternative, facially neutral explanation available—the 2020 confrontation arose from a union overtime dispute; Martin's 2022 conduct arose from an on-scene disagreement; the violence rumor was attributed to workplace dynamics.[220] But the availability of an alternative explanation does not defeat a discrimination claim at the pleading stage. It simply raises a factual dispute. A complaint survives as long as discriminatory motive is a plausible explanation- it need not be the only explanation. The court's contrary reasoning collapsed the plausibility inquiry into a weighing of competing explanations, which is the province of the factfinder, not the court on a Rule 12(b)(6) motion.

### D. Dyer’s Complaint stated a plausible conspiracy claim.

To state a conspiracy claim under § 1985, the plaintiff must merely allege that two or more persons conspired to deprive the plaintiff of equal protection of the law by taking an act in furtherance of this conspiracy that caused injury to the plaintiff.[221]

---

[219] ROA. 43, 46.
[220] ROA.139-40.
[221] *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).

The conspiracy must be motivated by racial animus.[222] The court dismissed the conspiracy claim on the ground that Dyer's allegations of coordinated action among the defendant firefighters were insufficient to plausibly establish an agreement.[223] In so holding, the court demanded a level of specificity about the mechanics of the alleged conspiracy that Rule 12(b)(6) does not require.

Dyer alleges that multiple firefighters coordinated in drafting special reports about the same incident—reports he alleges were false and misleading.[224] He alleges that rumors about him were spread in a concerted fashion by multiple employees across the workplace.[225] He alleges that these actions targeted him specifically, that they were carried out by more than one person acting in a unified direction, and that they resulted in formal disciplinary consequences against him.[226] Furthermore, each of these allegations is connected to the fact that these were white co-workers or supervisors directing these actions at Dyer, a Black man. These are not the kind of naked, conclusory allegations that *Iqbal* identified as insufficient. They are specific factual allegations describing coordinated conduct by identified actors toward a common discriminatory end—particularly when all reasonable inferences must be drawn in Dyer's favor.

---

[222] *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019).
[223] ROA.143.
[224] ROA.43.
[225] ROA.44.
[226] ROA.41-43.

As argued in connection with Dyer's hostile work environment claim, his complaint contains specific allegations that he, a Black firefighter, was systematically treated differently from white co-workers across a range of employment conditions: selective application of disciplinary procedures, denial of advancement opportunities, exclusion from the union, and targeted discipline unsupported by evidence. Conspiracy allegations do not arise in a vacuum. They arise in the context of a complaint that, read as a whole, plausibly describes a workplace in which multiple actors coordinated to disadvantage Dyer because of his race. This Court should reverse the dismissal and reinstate Dyer's Section 1985 claim.

### E. Dyer's Complaint stated a plausible claim under La. R.S. 51:2256.

Because the district court erroneously concluded that the only protected activity Dyer engaged in was the EEOC charge and that Dyer failed to allege an agreement to commit an unlawful act, it dismissed Dyer's state law conspiracy claim.[227] However, as stated in *supra* Section II.B.1, Plaintiff made internal complaints and appealed his unwarranted disciplinary actions, which are also protected activities. Furthermore, as stated above in *supra* Section II.D, Captain Martin and Deputy Chief Castle conspired to set Dyer up in a volatile situation so

---

[227] ROA.144-45.

that he would be terminated.[228] Also, the white officers conspired to create special reports against Dyer after this incident.[229] This Court should reverse the dismissal.

## IV. The District Court erred in denying Dyer's Motion to Amend.

The Fifth Circuit has "explicitly disapproved of denying leave to amend without adequate justification" and expressed its "strong preference for explicit reasons" and "indicated the disfavor with which [it] view[s] district court denials of amendments without stated reasons."[230] The court has also explained that "courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal."[231]

In this case, the district court held the amendment to be futile.[232] This conclusion illustrates that the district court created an insurmountable and inappropriate pleading standard for Title VII claims. The Second Amended Complaint went to great lengths to detail the race-based discrimination that Dyer was consistently subjected to and formed the basis for his retaliation, conspiracy, and disparate treatment claims.

With respect to Dyer's retaliation claim, the court dismissed his February 2020 complaints to Chief Hardy and Superintendent McConnell on the grounds that he

---

[228] ROA. 43.
[229] ROA.43.
[230] *Mayeaux v. La. Health Service & Indemnity Co.,* 376 F.3d 420, 426 (5th Cir. 2004).
[231] *Id.*
[232] ROA.562.

did not explicitly invoke racial discrimination.[233] The district court misconstrues the facts and states that "Dyer indicates that he specifically indicated to at least one supervisor that he thought the harassment was *not* related to his race, but rather his choice to work overtime."[234] But what Dyer actually pleaded was that "he was suffering harassment from the other firefighters and Captain Favalora for working overtime."[235] He goes on to state that he believed the harassment was due to race as well, but was fearful of retaliation if he made that complaint.[236] That fear itself, which Dyer explicitly alleged, is precisely the kind of chilling effect Title VII's antiretaliation provisions are designed to remedy.

It also ignores the totality of the circumstances. Dyer's amended complaint includes facts that he reported race-based harassment connected to his known identity as a supporter of racial equality,[237] that rumors were spread labeling him an "angry black man,"[238] and that the harassment by white co-workers intensified after he refused to join a coordinated boycott of overtime.[239] Taken together and accepted as true, these facts plausibly allege that Dyer's supervisors were on notice that racial animus was at least part of what was driving the mistreatment, even if Dyer hedged

---

[233] ROA.565.
[234] ROA. 565.
[235] ROA. 464.
[236] ROA.464.
[237] ROA.464.
[238] ROA.464-465.
[239] ROA.463.

out of fear of retaliation. He identified the individuals' actions (facts), explained to whom he made complaints, and described NOFD's failure to take any action against them while continuing to enforce rules against Dyer. These allegations were sufficient in detail and scope to state a claim, yet they were ignored.

The district court then concludes that Dyer failed to allege sufficient facts to show an adverse employment action that was due to his race.[240] But it again ignores that there was a strategic decision to initially charge Dyer under Rule 25—a rule targeting threats or acts of violence— rather than the more applicable Rule 24, which carries an obvious stigmatizing effect. Combined with allegations that Captain Martin engaged in identical conduct and received no comparable discipline,[241] the amended complaint plausibly alleges that the charge selection was punitive and racially motivated, not a neutral exercise of discretion.

As to the conspiracy claim, Dyer's new allegations included facts that multiple Caucasian firefighters independently chose to submit special reports, that Chief Castle made preemptive calls to other officers predicting violence, and that Captain Martin's report relied on racially charged "rumors" originating with Captain Favalora.[242] The district court construed these as merely describing ordinary workplace reporting. But a conspiracy need not be proven at the pleading stage; it

[240] ROA.566.
[241] ROA.468
[242] ROA. 466-468.

need only be *plausible*. The coordinated nature of these actions, where multiple actors moved in concert, in advance of Dyer's arrival, drawing on a preexisting racial narrative about him being "violent" and an "angry black man," is precisely the type of circumstantial pattern that courts recognize as sufficient to state a conspiracy claim. The district court's analysis improperly demanded direct evidence of an agreement rather than asking whether the facts taken together, make a coordinated scheme plausible.

Finally, the district court's dismissal of Dyer's new disparate treatment allegations rests on an overly narrow reading of the Complaint. The district court concluded that the harassment Dyer suffered was attributable to his refusal to boycott overtime rather than to his race.[243] But this framing presents a false binary. Dyer's amended complaint alleges that the overtime boycott was itself racially coordinated, given that it was led by a Caucasian captain against a Black captain who refused to participate and that the harassment escalated in racially distinctive ways, including rumors about an "angry black man," placement of a politically charged bumper sticker targeting Dyer's known civil rights beliefs, and conduct that his African American colleagues never engaged in. At the Rule 12(b)(6) stage, a court may not choose between competing plausible interpretations of the facts; it must accept the interpretation favorable to the plaintiff. Because Dyer's amended complaint

[243] ROA.572.

plausibly alleges that race and the overtime refusal were intertwined, the court's futility finding was error, and leave to amend should be granted.

## CONCLUSION

The district court repeatedly failed to view the facts pled in the Complaint and the inferences from them in the light most favorable to Dyer, while continuously disregarding Dyer's arguments and claims.[244] Such actions by a district court place an insurmountable burden on individuals, like Dyer, who are brave enough to pursue litigation to vindicate their rights. The district court's decision, if adopted by this Court, creates a permissive structure that allows employers to discriminate against and retaliate against employees because of their race. For all the reasons discussed above, Dyer respectfully requests that this Court reverse the district court's orders dismissing his retaliation, hostile work environment, and conspiracy claims and denying leave to amend, and that it remands the case so that Dyer may pursue discovery on these claims.

Dyer also asks this Court to conclude that the evidence presented created an issue of material fact as to whether race was a motivating factor in the decision to promote Simon over Dyer. For all the reasons stated herein, Dyer asks this Court to reverse the decision of the district court granting summary judgment in favor of Defendants and remand this case to the district court for a trial on the merits.

---

[244] *See Lewis,* 83 F.4th at 953.

Respectfully submitted,

*/s/ Stephanie Dovalina*

Stephanie Dovalina La Bar No. 31137
519 HUEY P. LONG AVE STE. 209
GRETNA, LA 70053
Phone: (504) 442-4959 Phone
Fax: (504) 353-9516 Fax
stephanie@dovalinalawgroup.com
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on March 18, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Stephanie Dovalina*
Stephanie Dovalina

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(A)(7)(B) because:

- This brief contains 10,112 words, excluding the parts of the brief exempted by Fed. R. App. 32(f)

2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type requirements of Fed. R. App. P. 32(A)(6) because

- This brief has been prepared in a proportionally spaced typeface using Microsoft word with a 14-point font named Times New Roman for text and 12 point for footnotes.

*/s/ Stephanie Dovalina*
Stephanie Dovalina