**No. 26-30012**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Varrick Dyer,

Plaintiff - Appellant

v.

New Orleans City; Roman Nelson, in his official capacity as Superintendent of New Orleans Fire Department,

Defendants - Appellees

---

**On Appeal from**
United States District Court for the Eastern District of Louisiana
2:24-CV-1702

---

**BRIEF OF APPELLEES ROMAN NELSON AND NEW ORLEANS CITY**

---

SUBMITTED BY:

William R.H. Goforth, LSB #33153
Deputy City Attorney
Sean M Markey, LSB #41467
Assistant City Attorney
Corwin M. St. Raymond, LSB #31330
Chief Deputy City Attorney
Gwyneth A. O'Neill, LSB #35944
Sr. Chief Deputy City Attorney
Charline K. Gipson, LSB # 32780
City Attorney
1300 Perdido Street
City Hall - Room 5E03

New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Facsimile: (504) 658-9868
Email: wrgoforth@nola.gov

*Counsel for Defendants-Appellees City of New Orleans and Roman Nelson in his official capacity as Superintendent of New Orleans Fire Department*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Varrick Dyer, Plaintiff-Appellant;
2. Roman Nelson, Defendant-Appellee; and
3. New Orleans City, Defendant-Appellee

**Counsel for the Parties:**

1. Counsel for Plaintiff-Appellant Varrick Dyer:

   Stephanie Dovalina
   519 Huey P. Long Ave., Ste. 209
   Gretna, Louisiana 70053

2. Counsel for Defendants-Appellees New Orleans City and Roman Nelson:

   William R.H. Goforth
   Sean M. Markey
   Gwyneth A. O'Neill
   Charline K. Gipson
   1300 Perdido Street, Room 5E03
   New Orleans, Louisiana 70112t

*/s/ William Rembert Henry Goforth*
Attorney of record for Defendants-Appellees, New Orleans City and Roman Nelson

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(2)(C), Defendants-Appellees New Orleans City and Roman Nelson (collectively referred to as the "City") respectfully submit that oral argument is not necessary. The briefs and the record adequately present the factual and legal issues for review. This case contains no novel legal issues or unique fact patterns which might warrant additional examination through oral argument. Accordingly, oral argument is unnecessary to aid the Court's consideration of this appeal.

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................ *i*

Statement Regarding Oral Argument ................................................................. *ii*

Table of Contents ……………………………………………………………… *iii*

Table of Authorities ............................................................................................ *iv*

Statement of the Case.............................................................................................1

Summary of the Argument.....................................................................................2

Law and Argument.................................................................................................4

I. Standard of Review ……………………………………………………….. 4

II. The District Court Correctly Granted Defendants' Motions to Dismiss ……. 7

III. The District Court properly denied Dyer's Motion to Amend ……..……….. 17

IV. Dyer's Title VII claim for race-based disparate treatment as to promotion was properly dismissed on summary judgment ………………………………….. 19

Conclusion ..........................................................................................................26

Certificate of Service ..........................................................................................27

Certificate of Compliance ...................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986) .......................................................... 6

*Antoine v. First Student, Inc.*, 713 F.3d 824 (5th Cir. 2013) ........................ 6,7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................ 5, 7, 8, 16

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007) ................................ 5, 6, 8

*Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536 (5th Cir.2005) ................. 7

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015) ........... 20

*Bustos v. Martini Club Inc.,* 599 F.3d 458 (5th Cir. 2010) ............................ 5

*Chhim v. Univ. of Tex. At Austin*, 836 F.3d 467 (5th Cir. 2016) ...................... 9

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) ............... 9

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ............. 11

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007) ....................................... 6

*Davis v. Dallas Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004) ................. 20

*EEOC v. WC&M Enters., Inc.* 496 F. 3d 393 (5th Cir. 2007) ........................ 14

*Garcia v. LumaCorp, Inc.,* 429 F.3d 549 (5th Cir.2005) ............................... 6

*Harris v. Forklife Sys. Inc.*, 510 U.S. 17, 114 S.Ct. 367,
126 L.Ed. 2d 295 (1993) ....................................................... 13, 14

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) ................... 13

*Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) ………………………………... 16

*Holdiness v. Stroud*, 808 F.2d 417 (5th Cir. 1987) ………………………………. 16

*Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987 (5th Cir. 2005) ……………….. 18

*Jordan v. Gautreaux,* 2022 WL 897549 (M.D. La. Mar. 25, 2022) ………………. 8

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ...………………….. 8

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) ……………………... 10

*Mendoza v. Helicopter*, 548 F. App'x 127 (5th Cir. 2013) ………………………. 10

*Meritor Savings Bank*, *FSB v. Vinson,* 477 U.S. 57, 106 S. Ct. 2399,
91 L. Ed. 2d 49 (1986) …………………………………………………………… 13

*Morris v. Town of Indep.*, 827 F.3d 396 (5th Cir. 2016) …………………………. 20

*Nash v Electrospace Sys., Inc*., I9 F.3d 401 (5th Cir. 1993) ……………………... 13

*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002) …………………………….. 13

*Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*,
2014 WL 2999237 (E.D. La. July 3, 2014) …………………………………….. 8

*Rodrigue v. PTS Mgmt. Grp., LLC*, 550 F.Supp. 3d 376 (W.D. La. 2021) ………. 13

*Parish v. Frazier,* 195 F.3d 761 (5th Cir. 1999) …………………………………. 18

*Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563 (5th Cir. 2003) ……………. 15

*Smith v. EMC Corp.,* 393 F.3d 590 (5th Cir. 2004) ……………………………… 17

*Turner v. United States*, 2023 WL 5209189 (E.D. La. Aug. 14, 2023) ………….. 13

*Villarreal v. Wells Fargo Bank, N.A*. 814 F.3d. 763 (5th Cir. 2016) …………….. 11

*Walker v. Travelers Cas. Ins. Co. of Am.*, No. 07-7364, 2008 WL 11353711, (E.D. La. Mar. 12, 2008) ........................................................ 18

*Williams v. E.I du Pont de Nemours & Co.,* 154 F. Supp. 3d 407 (M.D. La. 2015) ......................................................................... 13

*Wright v. Union Pac. R.R. Co.*, 990 F.3d 428 (5th Cir. 2021) ......................... 10

*Zuniga v. Masse Contracting*, *Inc.,* 290 F.Supp. 3d 581 (E.D. La. 2017) ............ 16

**Statutes**

La. R.S. 51:2256 ........................................................................ 15

**Rules**

Fed. R. Civ. P. 8 ........................................................................ 5

Fed. R. Civ. P. Rule 15 ................................................................ 15

## STATEMENT OF THE CASE

This appeal arises from the district court's dismissal of Plaintiff Varrick Dyer's claims against the City, which attempt to find a cause of action among Dyer's numerous workplace grievances concerning his coworkers at the New Orleans Fire Department ("NOFD") and perceived unfair treatment with respect to disciplinary action and promotional opportunities. These claims were all dismissed by the district court, either for failure to state a claim or on summary judgment. The district court's various decisions dismissing these claims are not erroneous and should be affirmed.

A majority of the relevant proceedings in the district court are set forth in the district court's Order and Reasons on the City's first motion for summary judgment, ROA.574-76, which the City incorporates as if set forth herein.[1] In sum, Dyer has asserted claims against the City for disparate treatment based on race under Title VII, hostile work environment based on race and color under Title VII, retaliation under Title VII, parallel discrimination and retaliation claims under Louisiana law, racial discrimination under 42 U.S.C. § 1981, deprivation of a vested property right

[1] All of the relevant decisions of the district court were issued by Magistrate Judge Janis van Meerveld, to whom the matter was referred on October 28, 2024 pursuant to the consent of the parties. ROA.115-16.

under 42 U.S.C. § 1983, conspiracy to interfere with civil rights under 42 U.S.C. § 1985, and conspiracy to violate human rights under La. R.S. 51:2256. *See* ROA.575.

Ultimately, the district court dismissed all of Dyer's claims for failure to state a claim, except for two Title VII disparate treatment claims. ROA.575. Dyer's disparate treatment claim for the disciplinary action taken against him for an altercation with a coworker, was dismissed on the City's first motion for summary judgment. ROA.574-90. Dyer has not appealed the dismissal of this claim. Dyer's last claim – a Title VII disparate treatment claim for not being considered for a newly created "special operations coordinator" position – was dismissed pursuant to the City's second motion for summary judgment. ROA.1097-1112. This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed the majority of Dyer's claims for failure to state a claim. The district court applied the correct standard of review, requiring Dyer to plead facts sufficient to establish each essential element of each claim. Dyer failed to meet this standard for every claim but his Title VII disparate treatment claims.

Dyer failed to state a retaliation claim under Title VII or Louisiana state law because he did not allege facts to establish a causal connection between his filing of an EEOC complaint and an attempt to discipline Dyer forty-two days later, which

was ultimately overturned by the New Orleans Civil Service Commission found NOFD had cause to impose discipline. Similarly, Dyer's claims for hostile work environment under Title VII, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law because the acts alleged do not rise to the level of severe and pervasive harassment, nor does Dyer allege any facts to establish any connection between the alleged harassment and his race or skin color. Dyer failed to plead a plausible conspiracy claim under 42 U.S.C. § 1981 or La. R.S. 51:2256 because he pled no facts to allow even an inference of connection between the independent events described in his amended complaint.

The district court also did not commit reversible error by denying Dyer's motion to amend his complaint. The district court properly exercised its discretion in determining that the proposed amendments would be futile because they added little new factual allegations and because the amendments would not materially affect the plausibility any of Dyer's claims.

Finally, the district court did not err by granting summary judgment as to Dyer's Title VII disparate treatment claim based on the fact that NOFD selected a white employee for the newly created position of special operations coordinator. The district court properly applied the summary judgment standard, finding the testimony of NOFD Superintendent Roman Nelson established as an uncontested fact that NOFD acted for legitimate, non-discriminatory reasons. Furthermore, the

reasons offered were not contradictory and could not allow a reasonable trier of fact to determine that NOFD's stated reasons were pretext for racial discrimination. NOFD clearly explained that the chief over the special operations division was allowed to select his preferred candidate, Captain Danny Simon, for the new position because he possessed the preferred qualification of having experience with all aspects of special operations. NOFD made the separate decision to not to formally consider Dyer for the position because Dyer only had experience with the hazardous materials team and because NOFD leadership believed Dyer would not want to give up the significant overtime he earned in his current position. These reasons are not contradictory, and Dyer failed to offer any evidence a trier of fact could rely upon to find pretext. Accordingly, Dyer's Title VII claim was properly dismissed.

The district court's decisions on Dyer's various claims were well-reasoned and free of legal error; accordingly, they should be affirmed on appeal.

## <u>LAW AND ARGUMENT</u>

### I. STANDARD OF REVIEW

#### A. Rule 12(b)(6) failure to state a claim.

The Court reviews the district court's grant of a motion to dismiss for failure to state a claim *de novo*, "accepting all well-pleaded facts as true and viewing those

facts in the light most favorable to the plaintiff."[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and allegations of conclusory nature will not be given the presumption of truth.[4]

For a complaint to be legally sufficient, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and even well-pleaded facts must allow the court to "infer more than the mere possibility of misconduct."[6]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8] "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line of possibility and plausibility of

---

[2] *Bustos v. Martini Club Inc.,* 599 F.3d 458, 461 (5th Cir. 2010).
[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).
[4] *Id.* at 678, 681 (citing *Twombly*, 550 U.S. at 555).
[5] *Id.* at 678.
[6] *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).
[7] *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).
[8] *Id*.

entitlement to relief."[9] "[A] plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief," thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10] Additionally, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."[11]

This Court "may affirm a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record."[12]

**B. Summary Judgment.**

A district court's dismissal of a plaintiff's claims on summary judgment is subject to *de novo* review on appeal, and the appellate court applies the same standards as the district court.[13] Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[14] However, "[i]f

---

[9] *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).
[10] *Twombly*, 550 U.S. at 555 (citation omitted).
[11] *Id.*
[12] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[13] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citing *Garcia v. LumaCorp, Inc.,* 429 F.3d 549, 553 (5th Cir.2005)).
[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

the evidence is merely colorable or is not significantly probative, summary judgment may be granted."[15] Furthermore, factual controversies are resolved in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[16]

## II. The District Court Correctly Granted Defendants' Motions to Dismiss.

### A. Dyer Confuses the Pleading Standard Under Rule 8 with the Standard for Granting a Motion to Dismiss Under Rule 12(b)(6).

Dyer asserts that the District Court erred by incorrectly applying the pleading standard set forth under Federal Rule of Civil Procedure 8(a)(2) when it dismissed his retaliation, hostile work environment, and conspiracy claims. Specifically, Dyer alleges that the district court improperly required him to make out a prima facie case for each of these claims at the "complaint stage."[17] However, this misstates the applicable law, fails to address the sound reasoning provided in the court's written opinions, and ignores the well-recognized plausibility standard established under *Ashcroft v. Iqbal.*

For a complaint to be viable, it must contain "sufficient factual matter" to make the claim facially plausible.[18] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

[15] *Id*. at 249-50 (internal citations omitted).
[16] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir.2005)).
[17] Appellant's Brief, Doc. 13 at p. 13.
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 278 (2009).

defendant is liable for the misconduct alleged.[19] Rule 8 "does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."[20] "The [pleading] standard is met by the 'reasonable inference' the court must make that, **with or without discovery**, the facts set forth a plausible claim for relief under a particular theory of law provided there is a 'reasonable expectation' that 'discovery will reveal relevant evidence of each element of the claim.'"[21] However, "[t]he plaintiff must have a 'reasonably founded hope' that discovery will reveal relevant evidence, rather than that discovery will simply lead to a plausible cause of action."[22] To be legally sufficient, a complaint must establish more than the sheer possibility that the claims are true.[23] As the Supreme Court stated in *Twombly*, "if there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed."[24]

Here, the district court correctly recognized that Dyer had not alleged sufficient facts to state a claim upon which relief can granted pursuant to Rule 12(b)(6). Dyer argues that in doing so the district court applied a more stringent

---

[19] *Id.*
[20] *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955)
[21] *Jordan v. Gautreaux,* 2022 WL 897549, at *6 (M.D. La. Mar. 25, 2022) (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257) (emphasis added).
[22] *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, 2014 WL 2999237, at *4 (E.D. La. July 3, 2014) (citing *Lormand v. U.S. Unwired, Inc.,* 565 F .3d 228, 256–7 (5th Cir.2009)) (emphasis added).
[23] *Iqbal,* 556 U.S. at 678.
[24] *Twombly,* 550 U.S. at 555, 127 S. Ct. 1955, 167 L.Ed.2d 929.

standard than is required under the Federal Rules. He cites to this Court's opinion in *Cicalese v. Univ. of Tex. Med. Branch* as support for the contention that a "Title VII Plaintiff 'need not make out a prima facie case' in his complaint."[25] But this is a selective reading of that case, and it conflates evidentiary standards with pleading requirements. As the *Cicalese* panel explained, "although plaintiffs do not 'have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [their] case plausible.'"[26] In other words, although evidence is not required at the pleading phase of discrimination case, a plaintiff must still plead sufficient facts to make his claims plausible as to each element of a given cause of action.

As explained in more detail below, the district court correctly dismissed Dyer's retaliation, hostile work environment, and conspiracy claims, not because of a lack of evidence, but rather because Dyer failed to plead sufficient facts to support them.

[25] Appellant's Brief, Doc. 13 at p. 36, n. 167 (citing *Cicalese v. Univ. of Tex. Med. Branch,* 924 F. 3d 762, 766 (5th Cir. 2019).

[26] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Chhim v. Univ. of Tex. At Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).

### B. Dyer failed to state a plausible retaliation claim.

A valid retaliation claim under Title VII requires a plaintiff to demonstrate: (1) that he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action.[27] The requirements for a valid retaliation claim under Louisiana law are substantively similar and have been routinely analyzed by the courts under the same standard.[28]

In this case, the district court correctly determined that only the statutorily protected activity that Dyer alleged was the filing of his EEOC Charge on April 6, 2013, and that he has failed to specifically identify any other event after taking the opportunity to amend his Complaint.[29] The Court also correctly determined that Dyer failed to allege sufficient facts to satisfy the second and third prongs of the pleading requirements for a valid retaliation claim.[30]

Dyer argues that the district court erred in this determination primarily because it improperly weighed evidence outside the pleadings, namely the December 14, 2023, written decision of the Civil Service Commission which was referenced in Dyer's Amended Complaint and attached to the City's Rule 12

---

[27] *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).
[28] *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 n. 4 (5th Cir. 2007); see also *Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013).
[29] ROA.135.
[30] ROA.136-7.

Motion.[31] But this argument is meritless. Although this Court has recognized that a district court "must limit itself to the contents of the pleadings, including attachments thereto,"[32] it has also repeatedly made clear that a district court may also consider documents if they are referred to in the plaintiff's complaint and are central to his claims.[33]

Here, Dyer's retaliation claim is predicated almost entirely on the Civil Service Commission's December 14, 2023 decision. Ironically, the Commission granted Dyer's disciplinary appeal and reversed his 36-hour suspension for the alleged violation of NOFD Rule 35 because it found that Dyer had not intended to "lend" the gate valve to his church.[34] Nevertheless, Dyer ostensibly points to this reversal as evidence that the charges against him were baseless and amounted to an adverse employment action taken against him that would dissuade a reasonable person from complaining of discrimination.[35] This written decision by the Civil Service Commission is therefore central to his claims. It is also referred to repeatedly throughout Dyer's pleadings in the record. Accordingly, the district court rightfully considered it when rendering its judgment.

---

[31] Appellant's Brief, Doc. 13 at p. 36.
[32] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)
[33] *Id.* at 498-99; *see also Villarreal v. Wells Fargo Bank,* N.A. 814 F.3d. 763, 766 (5th Cir. 2016).
[34] ROA.86-92.
[35] ROA.47-8; *see also*, ROA.105-6.

After considering the Commission's decision in light of Dyer's threadbare factual allegations, the district court also correctly determined that Dyer had failed to allege sufficient facts to show he had suffered an adverse employment action or that this alleged action was causally linked to the filing of his EEOC complaint. As the district court noted, the Civil Service Commission's decision was not baseless and one dissenting panelist would even have upheld Dyer's full suspension.[36] It is not disputed that Dyer took the valve without permission, placed it in an NOFD hazmat vehicle, and drove it to a church-sponsored community event.[37] Dyer has pleaded no facts to the contrary. Further, because Dyer's suspension was reversed and the Fire Department was ordered to reimburse Dyer in full for the 36 hours of his suspension, he cannot show that he suffered any adverse employment action.[38] Lastly, Dyer has established no causal link between the filing of his EEOC complaint and his citation for the violation of NOFD Rule 35. As the district court also explained, the fact that Dyer was cited for a rule violation 42 days after he filed his EEOC complaint is not sufficient to establish the required causal link.[39]

---

[36] ROA.131.
[37] *Id.*
[38] *See* ROA.86-92.
[39] ROA.131.

Accordingly, Dyer failed to plead sufficient facts to satisfy the required elements of a retaliation claim at the pleading stage, and the district court rightfully dismissed this claim pursuant to Rule 12(b)(6).

**C. Dyer failed to state a plausible hostile work environment claim.**

To establish a race-based hostile work environment claim under Title VII, an employee must prove that he: (1) belongs to a protected group; (2) was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[40] This same standard applies under § 1981, and the Louisiana Employment Discrimination Law.[41]

Harassment under Title VII generally takes the form of "discriminatory intimidation, ridicule, and insult" that rises to an objectively "hostile or abusive" level.[42] "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[43]

---

[40] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).
[41] *See Rodrigue v. PTS Mgmt. Grp., LLC*, 550 F.Supp. 3d 376, 393 (W.D. La. 2021); *Williams v. E.I du Pont de Nemours & Co.,* 154 F. Supp. 3d 407, 420 (M.D. La. 2015).
[42] *Harris v. Forklife Sys. Inc.*, 510 U.S. 17, 21, 22, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993) (quoting *Meritor Savings Bank*, *FSB v. Vinson,* 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).
[43] *Turner v. United States*, 2023 WL 5209189, *7 (E.D. La. Aug. 14, 2023) (citing *Nash v Electrospace Sys., Inc.*, I9 F.3d 401, 404 (5th Cir. 1993).

In making these determinations, the courts assess a number of factors including (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."[44] "No single factor is determinative" but "a single incident … , if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment."[45]

Here, the district court correctly found that "the instances of harassment alleged by Dyer are hardly severe or pervasive" and "do not plausibly implicate race or color."[46] Captain Favaloro shouted "Fuck you, vee" after Dyer did not respond to Favaloro's demand to discuss overtime work.[47] Dyer provides no other facts related to this single offensive utterance. Similarly, Dyer has alleged no facts that would suggest that Favaloro cutting the power on the treadmill he was using was motivated in any way by Dyer's race or color.[48] He has also alleged no facts which would suggest that Captain Martin's false call in February 2022 was motivated by Dyer's race or color.[49] Rather, Dyer has alleged that Martin was motivated by Dyer's failure

[44] *Harris*, 510 at 23, 114 S. Ct. 367.
[45] *EEOC v. WC&M Enters., Inc.* 496 F. 3d 393, 400 (5th Cir. 2007) (citations omitted).
[46] ROA.139.
[47] ROA.41.
[48] *Id*.
[49] ROA.41-2.

to exit the truck when responding to a fire.[50] It is also worth noting that subsequent to the alleged confrontation between Martin and Dyer, which followed this incident, both men ultimately received the exact same low-level penalty from the Department, a letter of reprimand.[51] Finally, the facts Dyer alleges related to rumors allegedly spread by Captain Neely are wholly conclusory and do not implicate Dyer's race or color in any way.[52]

In his Brief, Dyer argues that the district court erred because it did not consider the "cumulative weight of the allegations" but cites to no authority whatsoever in support of this contention.[53] Dyer merely asserts that because he is Black, discrimination is plausible here. This falls far short of what is required to state a hostile work environment claim at the pleading stage. As the district court aptly concluded "not only do the allegations of the Complaint fail to make any plausible connection between these incidents of harassment and Dyer's race or color, they do not rise to the level of frequent and/or severe harassment required to state a claim."[54]

**D. Dyer failed to state a plausible conspiracy claim under §1985.**

To state a claim conspiracy under §1985 a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly

[50] ROA.42
[51] ROA.43; ROA.84.
[52] ROA.44.
[53] Appellant's Brief, Doc. 13 at p. 45.
[54] ROA.141.

or indirectly, a person or class of persons of the equal protection under the laws; **and** (3) an act in furtherance of the conspiracy; (4) which causes injury to person or property or a deprivation of any privilege of a citizen of the United States.[55] The federal courts have held that an "understanding or agreement" between conspirators is the "essence" of the claim.[56]

Here, the district court rightly found that Dyer has failed to allege the existence of any agreement between the alleged conspirators.[57] Dyer's allegations do not provide the court with any facts from which to draw a "reasonable inference" that such an agreement exists as is required to survive a motion to dismiss pursuant to Rule 12(b)(6)."[58] Instead, Dyer merely lists a number of alleged incidents involving various individuals, which he even acknowledges can be explained by "alternative" means.[59] He has alleged no facts whatsoever to establish a connection between any incident, let alone an actual agreement or understanding among these various individuals. As such, Dyer has not met his burden of persuasion at the pleading stage and the district court properly dismissed his conspiracy claim under §1985.

---

[55] *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (emphasis added).
[56] *Zuniga v. Masse Contracting*, *Inc.,* 290 F.Supp. 3d 581, 587 (E.D. La. 2017) (quoting *Holdiness v. Stroud*, 808 F.2d 417, 425 (5th Cir. 1987)).
[57] ROA.143.
[58] *Iqbal*, 556 U.S at 678.
[59] Appellant's Brief, Doc. 13 at p. 46.

**E. Dyer failed to state a plausible claim under La. R.S. 51:2256.**

Dyer's conspiracy claim under state law fails for the same reasons as his § 10985 conspiracy claim. La. R.S. 51:2256 makes it unlawful to conspire to retaliate or discriminate because a person has opposed a practice made unlawful by the Louisiana Employment Discrimination law (Chapter 3-A of Title 23) or the chapter establishing the Louisiana Commission on human rights.[60]

In his Brief, Dyer merely cites his failed arguments related to his retaliation and federal conspiracy claims to support his state conspiracy claim pursuant La. R.S. 51:2226. He cites no additional authority. Accordingly, this claim fails for the reasons discussed *supra*, and the district court did not err in dismissing it.

**III. The District Court properly denied Dyer's Motion to Amend.**

Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings only by consent of the parties or by leave of court. The Rule provides that the court "should freely give leave when justice so requires."[61] Thus, this Court has held that a "district court must possess a 'substantial reason' to deny a request for leave to amend."[62] However, it has also noted that a leave to amend is "by no means automatic" and the "generous standard [of Rule 15] is tempered by the necessary

[60] La. R.S. 51:2256(1).
[61] Fed. R. Civ. P. Rule 15(a)(2)
[62] *Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004).

power of a district court to manage a case."[63] The district courts assess a number of factors when considering a motion for leave to amend, including repeated failures by the movant to cure deficiencies through previous amendments, undue prejudice to the opposing party, and the futility of amendment.[64] When the opposing party has filed a motion for summary judgment, as the City did in this case, this Court has instructed the district courts to "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment."[65]

In a thorough, and well-reasoned opinion, the district court denied Dyer's motion to leave for futility.[66] It found that Dyer's proposed amendment "hardly presents any new information," and that this information failed to make any "material difference" in the court's assessment of his claims under Rule 12(b)(6).[67] However, in his Brief, fails to substantively address any of the district court's reasoning but summarily asserts that such a denial for futility "illustrates that the district court created an insurmountable and inappropriate pleading standard for Title VII claims."[68] Dyer makes this assertion despite the fact that it is well within the district court's discretion to deny a motion to amend as futile.[69] Without citing to

---

[63] *Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted.)
[64] *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).
[65] *Parish v. Frazier,* 195 F.3d 761, 764 (5th Cir. 1999).
[66] ROA.559-72.
[67] ROA.562-63.
[68] Appellant's Brief, Doc. 13 at p. 49.
[69] *Walker v. Travelers Cas. Ins. Co. of Am.*, No. 07-7364, 2008 WL 11353711, at *1 (E.D. La. Mar. 12, 2008).

any additional authority, Dyer then proceeds to reiterate his failed retaliation and conspiracy claims.

As the district court noted, Dyer's barely amended claims suffer from the same deficiencies as the retaliation and conspiracy claims of Dyer's Amended Complaint, which the district court previously dismissed. Dyer has failed to plausibly alleged any additional facts which support the contention that he suffered adverse employment action *because of his race*.[70] Dyer even went so far as to admit to other reasons why he may have been harassed by his coworkers and further admits that he only "suspects" some of this harassment was related to his race.[71] This is simply not sufficient pursuant to Rule 12(b)(6). Because Dyer failed to state a plausible retaliation and conspiracy claim, the district court rightfully denied Dyer's Motion to Leave to Amend.

## IV. Dyer's Title VII claim for race-based disparate treatment as to promotion was properly dismissed on summary judgment.

The district court's decision granting Defendants' Second Motion for Summary Judgment should be affirmed. The district court was not required to accept Dyer's misconstruction of the evidence regarding NOFD's reasons for assigning Captain Simon to the special operations coordinator position[72] and not considering

[70] ROA.564-65.
[71] ROA.5.
[72] Although the record and the district court recognized a distinction between Captain Simon's initial assignment to the position of special operations coordinator and his subsequent promotion to the classification of Field Education Officer, this brief does not distinguish between the two

Dyer for either opportunity. NOFD, through Superintendent Nelson, provided clear, non-discriminatory reasons for its actions. Furthermore, these reasons are not inherently contradictory and do not otherwise permit a reasonable person to conclude that NOFD's stated reasons were pretext for racial discrimination.

The district court's finding rests on the second and third prong of the burden-shifting analysis applied to Title VII disparate treatment claims. Since the district court found there was a genuine issue of fact as to the elements of Dyer's prima facie case, the burden shifted to the City to "articulate a legitimate non-discriminatory reason for the adverse employment action."[73] When the City produced undisputed evidence of the legitimate, non-discriminatory reason, the burden shifted back to Dyer to "present evidence that the employer's proffered reason was mere pretext for racial discrimination."[74]

**A. NOFD's reasons are uncontested and non-discriminatory.**

First and foremost, NOFD produced uncontested evidence of legitimate, non-discriminatory reasons for its actions. NOFD, through the testimony of Superintendent Nelson acting as NOFD's corporate representative, articulated clear

positions, given the district court's finding as to a genuine issue of fact whether "the two assignments were, in fact, a single reassignment to a position of assisting the chief of special operations." ROA.137.

[73] *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)).

[74] *Morris*, 827 F.3d at 400 (quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004)).

reasons for its decisions relating to the selection of Captain Simon for the position of special operations coordinator and the separate decision not to consider Dyer for the opportunity. *See generally* ROA.776-817; ROA.896-941. As Dyer's brief tacitly recognizes, this testimony is the only record evidence of these facts.

With respect to the initial special operations coordinator assignment, NOFD followed its practice of allowing the commanding officer for the division to "select who they want to perform those roles." ROA.920. While Chief Bourdais identified Captain Simon as his preference, this choice was based on certain ideas of what qualities made Captain Simon a good candidate. "What's preferred is someone that has experience in all aspects of special operations." ROA.911. Superintendent Nelson's testimony establishes that Captain Simon clearly fit this preferred criteria: "going back to, I think, 2020, Captain Simon had already – he was already our Urban Search and Rescue task force leader. He had been managing the Canal Street collapse." ROA.789. Indeed, Superintendent Nelson approved of Chief Bourdais' choice because of Superintendent Nelson's own "experience working with Captain Simon, with him being on the hazardous materials unit, with him being the task force leader over the search and rescue team, with his management of the Canal Street collapse, as well as his assistance to our planning team and developing policies over the years." ROA.816-17.

Regarding Dyer, Superintendent Nelson explained that he was not considered for the position of special operations coordinator. This was true for everyone but Captain Simon: when asked who else besides Captain Simon was considered, Superintendent Nelson stated "I'm not aware that anyone else was considered." ROA.789. Superintendent Nelson also testified that "no specific review of skills or duties or anything like that" was performed to evaluate the relative qualifications of Captain Simon and Dyer. ROA.924. However, Superintendent Nelson had independent knowledge of both individuals' qualifications:

> Additionally, I myself have worked with both Captain Simon and Captain Dyer over the years. I've supervised both of them as special operations chief. I've worked with both of them as Homeland Security liaison and their roles in the hazardous materials team. So it's – it's – I have experience with both of them and their work habits and work ethics over the years, as well as their skill sets.

ROA.815-16. Accordingly, Superintendent Nelson did not need to conduct a formal review or comparison to understand why Captain Simon was the preferred candidate and decide that it was not necessary to consider Dyer, among others, for the position.

When asked specifically why Dyer was not considered for the special operations coordinator position, NOFD provided two related reasons: one concerning Dyer's perceived interest in the position and one concerning his qualifications. With respect to the first reason, it was explained to Dyer when he approached Superintendent Nelson directly about not being considered for special

operations coordinator.[75] Superintendent Nelson told Dyer that "based on his not being involved in Urban Search and Rescue and his consistently being one of the highest overtime earners on the fire department that I never would have imagined that he would have had any interest in working five days a week." ROA.921.

Additionally, Superintendent Nelson's own knowledge of Dyer's experience led him to recognize Dyer did not have the preferred qualifications that would merit considering him as an alternative to Captain Simon:

> Q. Why wasn't Captain Dyer considered for the position of special operations coordinator?
>
> A. Captain Dyer did not -- was not – as you mentioned, he was a HazMat captain, but Captain Dyer was not a member of the Urban Search and Rescue team, and so special operations encompasses heavy rescue, light rescue, hazardous 9 materials, and Urban Search and Rescue.
>
> Captain Dyer was on the HazMat unit. He had previous special operations experience on the heavy rescue earlier in his career, but he never participated in the Urban Search and Rescue aspect 14 of it other than in his HazMat role.

ROA.910. In sum, Dyer "did not have a role to the Urban Search and Rescue side and had a limited role and experience in developing policy." ROA.817. Absent the preferred experience in all aspects of special operations, there was no reason to consider Dyer for the position, particularly when Chief Bourdais had identified another candidate with the preferred experience.

[75] It is unclear whether this conversation was about the original special operations coordinator assignment or the promotion to Field Education Officer.

The district court correctly determined that NOFD articulated non-discriminatory reasons for (1) selecting Captain Simon for the special operations coordinator position without a formal application or review process and (2) not giving specific consideration to Dyer for the same position. The decision to select Captain Simon was based on the choice of Chief Bourdais, who identified Captain Simon for his significant experience with all aspects of special operations, which was the preferred qualification. Dyer was not considered because Superintendent Nelson did not believe he would not want to give up the significant overtime he earned in his position with the hazardous materials team and would not be interested in the coordinator position because he had never done any special operations work outside of hazardous materials. Superintendent Nelson also recognized that Dyer's lack of experience with the other aspects of special operations meant there was no reason to give Dyer particular consideration in comparison to Captain Simon. These reasons are legitimate business reasons and have nothing to do with the race of Dyer or Captain Simon.

**B. Dyer cannot create a genuine issue by conflating and misconstruing NOFD's reasons.**

Dyer argues that the reasons articulated by NOFD do not warrant summary judgment because it was "conflicting and contradictory," and the district court made an improper credibility determination. However, as shown above, NOFD's

articulated reasons are perfectly consistent and do not provide any reason for a trier of fact to question the decision-maker's credibility.

Dyer's error lies in conflating the decision to assign Captain Simon with the decision not to consider Dyer. As shown above, these two decisions were separate and had distinct reasons. Furthermore, there is nothing contradictory about Superintendent Nelson having multiple reasons for not giving consideration to Dyer for the position beyond Nelson's existing knowledge of Dyer's qualifications. It is reasonable to believe that Dyer would not be interested in the position **and** that consideration was not needed given Dyer's lack of special operations experience beyond the hazardous materials team.

The undisputed facts simply do not create an actual controversy as to the reasons articulated by NOFD or the possibility of pretext. In the absence of direct evidence of ulterior, racial motives, Dyer cannot carry his burden to show pretext. Notably, even if Dyer had produced evidence calling Superintendent Nelson's credibility into question or directly, there would still be no evidence suggesting that NOFD's stated reasons were pretext **for racial discrimination**. The district court correctly found that neither the fact that Captain Simon was white nor Dyer's subjective believe about Chief Bourdais' motives was colorable evidence that "race was a factor in NOFD's decision."[76] The "presumption of discrimination" created

---

[76] ROA.1110.

by Dyer's prima facie case does not absolve Dyer from his burden to demonstrate that discrimination was the motivation underlying any pretext.

## CONCLUSION

For all of the foregoing reasons, this Honorable Court should affirm the district court's decisions dismissing all of Plaintiff Varrick Dyer's claims against Defendants New Orleans City and Superintendent Roman Nelson

Respectfully Submitted,

/s/ *William Rembert Henry Goforth*

**William R.H. Goforth, LSB #33153**
Deputy City Attorney
**Sean M Markey, LSB #41467**
Assistant City Attorney
**Corwin M. St. Raymond, LSB #31330**
Chief Deputy City Attorney
**Gwyneth A. O'Neill, LSB #35944**
Sr. Chief Deputy City Attorney
**Charline K. Gipson, LSB # 32780**
City Attorney
1300 Perdido Street
City Hall - Room 5E03
New Orleans, Louisiana 70112
Telephone: (504) 658-9800
Facsimile: (504) 658-9868
Email: wrgoforth@nola.gov

*Counsel for Defendants-Appellees City of New Orleans and Roman Nelson in his official capacity as Superintendent of New Orleans Fire Department*

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of May, 2026, I have served the foregoing document on all parties via the Court's e-filing system, in compliance with Fed. R. App. P. 25(b) & (c).

*/s/William Rembert Henry Goforth*

**CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Cir. R. 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because:

1. This brief contains approximately 6096 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.1.
2. This brief complies with the typeface requirements Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 Point.

*/s/William Rembert Henry Goforth*