**No. 26-30012**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

VARRICK DYER,

*Plaintiff-Appellant,*

V.

NEW ORLEANS CITY; ROMAN NELSON, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF NEW ORLEANS FIRE DEPARTMENT,

*Defendants-Appellees*

---

On Appeal from the United States District Court for the Eastern District of Louisiana,
Case No. 2:24-cv-01702-JVM

---

**REPLY BRIEF OF APPELLANT VARRICK DYER**

---

Stephanie Dovalina, Bar No. 31137
519 Huey P. Long Avenue, Ste. 209
Gretna, LA 70053
Phone No.: (504) 442-5705
Mobile: (504) 442-4959
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
*Counsel for Appellant*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i
**TABLE OF AUTHORITIES** .......... ii
**SUMMARY OF ARGUMENT** .......... 1
**ARGUMENT** .......... 2
**I. A reasonable jury could find that NOFD discriminated against Dyer by promoting Simon.** .......... 2
*A. NOFD concedes–and then ignores–the significance of Simon's promotion to Fire Education Officer.* .......... 2
*B. A reasonable jury could find that NOFD engaged in discriminatory conduct.* .......... 3
*C. NOFD misapplies the pretext standard by requiring direct evidence of racial animus.* .......... 7
**II. Dyer pleaded claims of retaliation, hostile work environment, and conspiracy.** .......... 8
*A. Dyer pleaded facts that NOFD retaliated against him.* .......... 8
*1. NOFD improperly limits Dyer's protected activity to his EEOC filing.* .......... 8
*2. NOFD's argument that Dyer did not suffer an adverse employment action fails under Supreme Court precedent.* .......... 9
*B. Dyer's complaint stated a plausible Hostile Work Environment claim.* .......... 12
*C. Dyer's complaint stated a plausible conspiracy claim.* .......... 13
**CONCLUSION** .......... 15
**CERTIFICATE OF SERVICE** .......... 16
**CERTIFICATE OF COMPLIANCE** .......... 16

# TABLE OF AUTHORITIES

**Cases**

*Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 72 (2006).....9
*DeCorte v. Jordan*, 497 F.3d 433 (5th Cir. 2007). .....................................................6
*Frank v. Xerox Corp*., 347 F.3d 130 (5th Cir. 2003)...........................................12
*Nunez v. Superior Oil Co.,* 572 F.2d 1119 (5th Cir. 1978).......................................3
*Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133 (2000) .................. 3, 4, 7
*Soublet v. La. Tax Com'n*, 766 F. Supp. 2d 723 (E.D. La. 2011). ............................9
*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)................................................7
*Tiblier ex rel. Tiblier v. Dlabal*, 743 F.3d 1004 (5th Cir. 2014) ...............................3
*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983). ........................7
*Wright v. Union Pac. R.R. Co.,* 990 F.3d 428 (5th Cir. 2021); ................................9
*Zuniga v. Masse Contracting, Inc.,* 290 F.Supp.3d 581, 587 (E.D. La. 2017)........14

**Statutes**

La. R.S. 51:2256 ..........................................................................................15
U.S.C. § 1985 ..............................................................................................15

## SUMMARY OF ARGUMENT

Varrick Dyer is a Black firefighter who was passed over for promotion in favor of a less-senior white colleague chosen through no process at all—no posting, no interviews, no comparison of qualifications—by a supervisor who admitted he never even considered Dyer for the role and had no idea what certifications either candidate held. While Dyer was denied advancement, white co-workers physically intimidated him, spread rumors labeling him an "angry black man," subjected him to false disciplinary charges under a rule reserved for threats of violence, and coordinated reports designed to paint him as dangerous. Appellees (“hereinafter referred to as NOFD”) retaliated against him by imposing a 36-hour suspension just 42 days after he filed an EEOC charge. Dyer opposed the discrimination at every turn: he complained to his supervisors, appealed his discipline to the Civil Service Commission, and testified under oath that he believed he was being targeted because of his race—and each time, NOFD found new ways to single him out, holding him to standards applied to no one else and excluding him from opportunities freely extended to his white peers.

NOFD maintains that all of this was perfectly lawful. In its view, Title VII says nothing about a promotion decided without process, discipline unsupported by evidence, or a workplace where a Black captain is the only one whose overtime requires a chief's direct intervention. To reach that conclusion, NOFD commits the

cardinal sins of appellate practice: it ignores the specific allegations it cannot answer; defers to a district court that resolved every factual dispute in NOFD's favor; and asks this Court to accept shifting, irreconcilable justifications as legitimate, without ever explaining why a jury should not be the one to decide. For the reasons set forth in Dyer's opening brief and those given in reply, the district court's dismissal of his discrimination, retaliation, hostile work environment, and conspiracy claims was error. Those decisions should be reversed, and the case remanded for trial.[1]

## ARGUMENT

### I. A reasonable jury could find that NOFD discriminated against Dyer by promoting Simon.

#### A. NOFD concedes–and then ignores–the significance of Simon’s promotion to Fire Education Officer.

NOFD’s opposition acknowledges in a footnote that "the record and the district court recognized a distinction between Captain Simon's initial assignment to the position of special operations coordinator and his subsequent promotion to the classification of Field Education Officer," but then expressly states that "this brief does not distinguish between the two."[2] This concession is significant. NOFD declines to engage with the record evidence—including NOFD's own testimony—

[1] This reply brief is intended solely to respond to the NOFD's contentions that require further discussion for proper determination of the issues raised on appeal. This brief does not respond to issues that Appellant believes were adequately discussed in the opening brief, and Appellant intends no waiver of these issues by not expressly reiterating them herein.
[2] Appellee Br. 19.

that Civil Service classifies the Fire Education Officer as a promotional transaction involving a higher rate of pay.[3]

Its decision to collapse these two separate employment actions into a single "reassignment" mirrors the district court's error. NOFD fails to offer any record citation or legal authority for the proposition that a transaction that Civil Service itself classifies as a promotion may be treated as a reassignment for purposes of Title VII analysis. The district court's uncritical adoption of this framing, against the weight of the record, is itself evidence of the improper credibility determination and standard-of-review error Dyer has identified.

**B. A reasonable jury could find that NOFD engaged in discriminatory conduct.**

First, NOFD's brief fails to address the proper standard for a motion for summary judgment, where it is required that the court **must not weigh the evidence or evaluate its credibility**.[4] Instead, the parties are entitled to have a jury "draw those inferences or conclusions that are appropriate grist for juries."[5] But that is exactly what the district court did here.

The most significant point of NOFD's opposition is what it does not dispute. It does not contest that NOFD failed to conduct any formal application process,

---

[3] ROA.915, 937.

[4] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Tiblier ex rel. Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014).

[5] *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir. 1978).

posted no vacancy announcement, sent no email gauging interest, and failed to perform any comparison of Captain Dyer's and Captain Simon's qualifications.[6] Superintendent Nelson admitted he never reviewed their annual performance evaluations.[7] Nelson also acknowledged that he had "no idea" what certifications Captain Simon held that Captain Dyer did not.[8]

NOFD's only response to these admissions is to argue that Nelson had "independent knowledge" of both candidates based on his supervisory history.[9] But this argument highlights the problem, not a solution. Whether Nelson's personal impressions—untethered to any documented criteria, any formal review, or any comparative analysis—constituted a reliable basis for a promotion decision is precisely the kind of credibility and reliability determination reserved for a jury. The district court was not permitted to accept NOFD'S explanation as worthy of credence and dispose of the case on summary judgment.[10]

Furthermore, NOFD fails to address the undisputed record evidence that the only formal qualification for the Fire Education Officer position was holding the rank of fire captain, a requirement both Dyer and Simon met.[11] Appellee offers no response to Dyer's argument that invoking post-hoc, unverified, and undocumented

---

[6] ROA. 904, 921, 924.
[7] ROA. 939-940.
[8] ROA.924.
[9] Appellee Br. 22.
[10] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[11] ROA.910-11, 914.

criteria to distinguish between two equally qualified candidates, particularly where the final decision maker admitted to never actually comparing qualifications, is precisely the type of explanation a reasonable jury could find unworthy of credence.

Instead, NOFD insists that Captain Simon's Urban Search and Rescue experience made him the preferred candidate.[12] Notably, they offered no evidence of this alternative certification/experience other than Nelson’s testimony. And NOFD again fails to address the record: Nelson himself testified that the Fire Education Officer role primarily involves administrative work and equipment maintenance,[13] rendering Urban Search and Rescue experience largely irrelevant to the actual demands of the position. NOFD’s silence on this point is telling. A qualification touted as decisive that has no functional connection to the duties of the position is precisely the kind of "unworthy of credence" explanation that, when combined with the other record evidence, creates a genuine issue of material fact for the jury.

Finally, NOFD’s attempt to reconcile these shifting reasons does not eliminate the genuine factual dispute; it only serves to confirm it. NOFD argues that its reasons are not "conflicting and contradictory," but rather complementary: Nelson had

[12] Appellee Br. 23.
[13] ROA.924

multiple, consistent reasons for both selecting Simon and declining to consider Dyer.[14] This characterization is untenable on the record.

NOFD's own brief concedes that Nelson's testimony conflated at least three separate justifications: (1) that the commanding officer selected Simon based on Chief Bourdais' recommendation without any process; (2) that Simon had preferred qualifications that Dyer lacked; and (3) that Nelson assumed Dyer would not be interested due to his overtime earnings.[15] These explanations are not merely "complementary"—they reflect a decision-making process that was, by NOFD's own account, informal, undocumented, and never subjected to any comparative review. When a decision-maker offers multiple inconsistent accounts, shifts explanations across proceedings, and admits it never evaluated the qualifications it later invokes as decisive, the trier of fact, not the district court, must assess credibility.[16]

NOFD further attempts to explain the overtime assumption by presenting it as a single, reasonable inference Nelson drew.[17] But NOFD does not dispute that this assumption was never communicated to Dyer prior to the promotion decision and was never based on any inquiry of Dyer's actual interest. The undisputed facts

[14] Appellee Br. 25.
[15] Appellee Br. 24. Nelson also testified that he never even considered Dyer for the role.
[16] *See DeCorte v. Jordan*, 497 F.3d 433, 439 (5th Cir. 2007).
[17] Appellee Br. 24.

demonstrate that the overtime rationale was both procedurally suspect and substantively hollow. A jury should be permitted to weigh those facts.

### C. NOFD misapplies the pretext standard by requiring direct evidence of racial animus.

NOFD ultimately argues that even if NOFD's reasons were pretextual, Dyer has produced no evidence that race was the motivating factor. This argument misreads controlling law and doubles down on the district court's central legal error. The Supreme Court squarely held that once a plaintiff has established a prima facie case and demonstrated that the employer's proffered reason is unworthy of credence, no additional proof of discrimination is required.[18] The trier of fact may infer discriminatory intent from the falsity of the employer's explanation.[19] NOFD’s insistence that Dyer must also produce direct evidence of racial animus is precisely the heightened evidentiary burden the Supreme Court rejected in *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716-717 (1983).

NOFD fails to dispute the following: (1) the district court found a genuine issue of fact as to whether Dyer suffered an adverse employment action;[20] (2) the district court found a genuine issue of fact as to whether Dyer and Simon were similarly situated;[21] (3) it is undisputed that Dyer is a member of a protected class

---

[18] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).
[19] *Reeves*, 530 U.S. at 146–47.
[20] ROA.1108.
[21] ROA.1109.

and was qualified for the position;[22] and (4) Dyer testified that he believed the position was given to Simon because Bourdais only surrounds himself with white firefighters and wanted a white firefighter in the role.[23] Taken together, and viewed in the light most favorable to Dyer, this evidence is sufficient to permit a rational trier of fact to return a verdict in Dyer's favor. It was an error for the district court to demand more. For these reasons, and those set forth in Dyer's opening brief, this Court should reverse the district court's grant of summary judgment and remand for trial.

## II. Dyer pleaded claims of retaliation, hostile work environment, and conspiracy.

### A. Dyer pleaded facts that NOFD retaliated against him.

#### 1. NOFD improperly limits Dyer's protected activity to his EEOC filing.

Dyer's opening brief argued at length that the district court erred by identifying the April 6, 2023, EEOC charge as the only protected activity.[24] Dyer alleged: (1) an internal complaint to Superintendent McConnell about racially discriminatory conduct in February 2020; (2) appeals of disciplinary actions to the Civil Service Commission in November 2022 and July 2023; and (3) testimony at civil service hearings that he believed he was being discriminated against because

[22] ROA.12, 910-11, 914.
[23] ROA.888.
[24] Opening Br. 31.

of his race.[25] All of these constitute protected activity under Fifth Circuit precedent.[26]

NOFD's opposition is entirely silent on this argument. NOFD does not cite a single case disputing that internal complaints or civil service appeals constitute protected activity. NOFD does not argue that these allegations were insufficiently pleaded. NOFD does not address Dyer's argument that the failure to consider this full range of protected activity caused the district court to erroneously analyze both the adverse action and causation elements. This silence constitutes a concession. By failing to engage with these arguments, NOFD leaves Dyer's showing unrebutted and provides this Court with no basis for affirming on these grounds.

**2. NOFD's argument that Dyer did not suffer an adverse employment action fails under *Supreme Court* precedent.**

NOFD does not dispute that Dyer was subjected to an adverse employment action in the form of a 36-hour suspension, which the Civil Service Commission later reversed. NOFD instead argues that because the suspension was ultimately reversed, Dyer suffered no adverse employment action.[27] This argument directly contradicts controlling Supreme Court precedent. In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court held that a 37-day suspension without

[25] ROA.41, 43–47.
[26] *See Wright v. Union Pac. R.R. Co.,* 990 F.3d 428, 434 (5th Cir. 2021); *Soublet v. La. Tax Com'n*, 766 F. Supp. 2d 723, 734 (E.D. La. 2011).
[27] Appellee Br. 12.

pay constituted a materially adverse action even though the employee was ultimately reinstated and awarded back pay.[28] The Court explicitly reasoned that a suspension—even one later reversed—would deter a reasonable worker from complaining about discrimination because of the immediate burden of lost income, a formal disciplinary record, and the cost and effort of mounting an appeal.[29] NOFD's opposition does not cite *Burlington Northern* on this point. NOFD offers no principled distinction between the facts here and those the Supreme Court found sufficient. That is dispositive.

Here, the burden Dyer faced was of the same kind. He lost 36 hours of pay.[30] He incurred a formal disciplinary record.[31] He was required to retain counsel and litigate before the Civil Service Commission.[32] At the pleading stage, where all factual allegations must be accepted as true, these harms are more than sufficient to plead a materially adverse action. Furthermore, NOFD attempts to paint the disciplinary action as proper because one dissenting panelist on the Commission would have upheld the suspension.[33] But this argument asks the Court to resolve a

[28] 548 U.S. 53, 72 (2006).
[29] *Id.*
[30] ROA.46.
[31] ROA.46.
[32] ROA.46–47.
[33] Appellee Br. 12.

contested factual dispute against the plaintiff at the 12(b)(6) stage, which is prohibited.[34]

Dyer alleged that the disciplinary charge was never supported by evidence.[35] The majority of the Civil Service Commission agreed, finding the discipline arbitrary and reversing the suspension.[36] The district court acknowledged this result but nonetheless credited the dissenting commissioner's view over Dyer's allegation and the Commission majority's finding.[37] That was impermissible fact-finding. A divided ruling on a contested disciplinary charge does not, as a matter of law and at the pleading stage, establish that the charge was legitimate. At most, it confirms that reasonable people could—and did—disagree. That disagreement is for the trier of fact, not the court on a motion to dismiss.

Finally, NOFD fails to dispute that the district court's adverse action analysis was limited entirely to the Rule 35 suspension, ignoring the other adverse actions Dyer alleged: being passed over for promotion to Special Operations Coordinator and Fire Education Officer, being subjected to disparate disciplinary standards compared to white counterparts, and being the only captain to have a chief directly enter his overtime hours.[38] NOFD offers no argument that these allegations fail to

---

[34] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
[35] ROA.46–47.
[36] ROA.89-42.
[37] ROA.10.
[38] ROA.43–45.

meet the materially adverse standard. NOFD's silence on these additional adverse actions is a concession that, standing alone, each would survive Rule 12(b)(6) scrutiny.

NOFD's opposition leaves the core of Dyer's argument unrebutted for his retaliation claim. The district court's dismissal of the retaliation claim rested on impermissible fact-finding, a limited reading of protected activity, and a misapplication of *Burlington Northern*. This Court should reverse and remand.

**B. Dyer's complaint stated a plausible Hostile Work Environment claim.**

NOFD concedes that the cumulative-effect standard for a hostile work environment claim governs but ignores it. The entire argument analyzes each incident in isolation and concludes that none, standing alone, suffices to create a hostile work environment. That is precisely the error Dyer identified in the district court's ruling.[39] NOFD offers no response to the argument that the cumulative weight of years of incidents spanning multiple supervisors and co-workers must be assessed together.[40] Its silence on the aggregation requirement confirms the district court's approach was legally flawed.

Dyer's opening brief identified concrete, specific allegations of hostile treatment: Dyer was the only captain required to enter his own overtime; the only

[39] Opening Br. 38.
[40] *See Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

employee who had Chief Casey preside over his disciplinary review board; the only captain denied the opportunity to apply for the Special Operations Coordinator role; and was excluded from the union.[41] Dyer also alleged that white counterparts who engaged in comparable conduct received lighter or no discipline.[42] These are not, as NOFD implies, mere assertions that "because he is Black, discrimination is plausible."[43] They are specific factual allegations of differential treatment by race.

Instead, NOFD argues that each incident had a neutral explanation. But NOFD fails to cite any authority for the proposition that the availability of a neutral explanation forecloses a discrimination claim at the pleading stage. That is because no such authority exists. A complaint survives Rule 12(b)(6) so long as discriminatory motive is a plausible explanation—it need not be the only one. *Twombly* and *Iqbal* require plausibility, not the elimination of competing inferences. The existence of a neutral alternative explanation creates a factual dispute; it does not resolve one. NOFD's argument collapses the plausibility standard into a merits determination that belongs to the factfinder. The district court's dismissal of the hostile work environment claim should be reversed.

### C. Dyer's complaint stated a plausible conspiracy claim.

[41] ROA.44–46; Opening Br. 37-39.
[42] Opening Br. 37-39.
[43] Appellee Br. 15.

NOFD’s entire argument rests on the assertion that Dyer has not alleged facts showing an "agreement" or "understanding" among the alleged conspirators. But NOFD fails to city any authority establishing what level of specificity Rule 12(b)(6) requires when pleading a conspiracy agreement. The single case NOFD invokes for the "understanding or agreement" is distinguishable. In *Zuniga v. Masse Contracting, Inc.,* the plaintiffs’ allegations were conclusory, simply stating that the defendants formed a conspiracy.[44] In contrast, Dyer’s opening brief identified concrete allegations of coordinated action: multiple firefighters jointly drafting false special reports about the same incident;[45] rumors spread in a concerted fashion by multiple employees across the workplace;[46] and a pattern of coordinated discipline and exclusion directed at Dyer alone.[47] NOFD’s attempt to conflate the merits standard with the pleading standard, demanding at the complaint stage proof that is properly the subject of discovery. There is no authority—and NOFD cites none—requiring a plaintiff to allege the precise mechanics of a conspiratorial agreement in order to survive dismissal.

Furthermore, NOFD’s opposition does not address any of these specific allegations. Instead, it recycles the district court's conclusion that Dyer "merely lists"

---

[44] 290 F.Supp.3d 581, 587 (E.D. La. 2017).
[45] ROA.43.
[46] ROA.44.
[47] ROA.41–43.

incidents without connecting them—a characterization that ignores the complaint's allegations of joint conduct by identified actors toward a common end. NOFD also does not respond to Dyer's argument that conspiracy allegations must be read in the context of the complaint as a whole,[48] which describes a workplace where multiple supervisors and co-workers systematically disadvantaged Dyer—a Black firefighter—across disciplinary proceedings, promotion decisions, union membership, and overtime administration, while his white counterparts were treated differently.[49] That pattern, taken together and with all reasonable inferences drawn in Dyer's favor, plausibly supports an inference of coordinated discriminatory purpose. NOFD's failure to engage with this argument leaves it unrebutted. The district court's dismissal of the Section 1985 and La. R.S. 51:2256 claims should be reversed.

## CONCLUSION

This Court should reverse the district court's judgment on all of Dyer's claims and remand for further proceedings.

Respectfully submitted,
*/s/ Stephanie Dovalina*
Stephanie Dovalina La Bar No. 31137
519 HUEY P. LONG AVE STE.
209 GRETNA, LA 70053
Phone: (504) 442-4959
Fax: (504) 353-9516 Fax

[48] Opening Br. 41.
[49] Opening Br. 41-42.

stephanie@dovalinalawgroup.com
*Attorney for Appellant Dyer*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on June 8, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Stephanie Dovalina*
Stephanie Dovalina

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 2(A)(7)(B) because:

   - This brief contains 3,172 words, excluding the parts of the brief exempted by Fed. R. App. 32(f)

2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type requirements of Fed. R. App. P. 32(A)(6) because

   - This brief has been prepared in a proportionally spaced typeface using Microsoft word with a 14-point font named Times New Roman for text and 12 point for footnotes.

*/s/ Stephanie Dovalina*
Stephanie Dovalina